# HARRY B. SMITH v. KEDNEY WAREHOUSE COMPANY, INC.[1]

### Nos. 30,876, 30,884.

### June 19, 1936.

[1]Reported in 267 N. W. 478, 269 N. W. 633.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for plaintiff-appellant.

*Sexton, Mordaunt, Kennedy & Carroll* and *Child & Child,* for defendant-appellant.

LORING, JUSTICE.

This is an action to recover for personal injuries suffered by plaintiff, an employe of the Val Blatz Brewing Company, when he fell into an open and unguarded elevator shaft on the premises of defendant warehouse company. A jury returned a verdict in favor of the plaintiff for $15,700. The defendant moved for judgment notwithstanding the verdict or a new trial or for a modification of the verdict. The trial court denied the motions for judgment and a new trial but granted the motion for an order modifying the verdict. The latter motion was granted on the ground that plaintiff's employer, the Blatz company, and the defendant being both subject

to part II of the workmen's compensation act, were engaged "in furtherance of a common enterprise, or the accomplishment of the same or related purposes" and as a consequence plaintiff's recovery was limited as provided by 1 Mason Minn. St. 1927, § 4291. Plaintiff's injuries resulted in a 33 1/3 per cent permanent disability of each leg, and the court by the same order awarded plaintiff an amount double that allowable for a like disability to one leg as provided by 1 Mason Minn. St. 1927, § 4274, subd. (c), paragraphs (41) and (19), together with certain other compensation.

Plaintiff then moved the court for an order amending the findings, asserting that the Blatz company and defendant were not engaged in a common enterprise or in the accomplishment of the same or related purposes at the time plaintiff was injured, and if that motion were denied, for a new trial. That motion was denied *in toto*, and plaintiff appeals. The defendant also appeals from the order denying its motion for judgment notwithstanding the verdict or a new trial. Separate briefs have been filed in each appeal, but the same record is submitted in both. We shall consider the two appeals together.

It is the claim of the plaintiff on his appeal (1) that the Blatz company and the warehouse company were not engaged in the furtherance of a common enterprise or engaged in the accomplishment of related purposes at the time of plaintiff's injury and that the evidence supports no such conclusion; (2) that even if his view of that feature of the case is correct, the trial court erred in fixing plaintiff's damages under the workmen's compensation act.

Defendant's contentions on its appeal are (3) that there was not sufficient evidence at the trial to establish any negligence proximately causing the injuries complained of, and (4) that plaintiff was conclusively shown to have been guilty of contributory negligence.

The facts do not appear to be materially disputed.

The Blatz company is a manufacturer of soft drinks and beer and maintains its principal plant at Milwaukee. For the purpose of distributing its products in the Twin Cities area, prior to the advent of 3.2 per cent beer in April, 1933, it had a branch office in

Minneapolis with a resident manager. In April, 1933, an arrangement was made with the defendant warehouse company whereby it was to store the Blatz company's products, including its 3.2 per cent keg beer. At the same time the Blatz company arranged to rent office space in the building of the warehouse company in St. Paul on a monthly rental basis. The warehouse company was to be paid a flat rate per package for the stock stored. Plaintiff was installed as manager of the St. Paul office by the Blatz company. He, with other Blatz company employes, used and occupied the rented office in the defendant's building.

When the keg beer from the Blatz plant at Milwaukee reached the railroad sidings at defendant's warehouse it was taken off the cars by defendant and placed in its "cooler rooms," where it was kept until requisitioned by the Blatz company. When the stock was ordered out of the cooler rooms the defendant, according to its agreement with the Blatz company, was to take it from the cooler rooms and place it on the shipping platforms, where it was to be called for by the Blatz company's trucks. For receiving, storing, and delivering the keg beer to its delivery platform, defendant was to receive a stated price per keg. The Blatz company did not rent the cooler rooms.

Henry A. Anderson was the superintendent of the defendant's warehouse. His duties consisted of supervising the work of the warehouse. He assigned space for goods to be stored and checked in and out all products stored at the warehouse. When the Blatz company requisitioned stock out of the cooler rooms the requisition was to be sent to Anderson, who authorized its withdrawal from the cooler room. The Blatz bookkeeper kept a running inventory of the stock and checked his figures with those kept by Anderson of the same stock. The bookkeeper endeavored to make his figures correspond with Anderson's. Anderson was in charge of the warehouse employes, and plaintiff had been directed to go to him with any requests or directions about the storage.

Due to the large demand for its product in the summer and fall of 1933, the supply, which was insufficient to meet the demand, had to be apportioned among the retailers. It was plaintiff's duty so to

apportion the amount on hand, and for that purpose he made frequent trips from the Blatz office in the warehouse building into the basement to the cooler rooms, to check the amount of keg beer on hand. On these trips he was generally accompanied by Anderson.

On the day of the accident plaintiff and Sweeney, another salesman for the Blatz company, went into the basement of the warehouse to check the stock in the cooler rooms preparatory to apportioning part of the stock to a retailer who had ordered a substantial shipment. After reaching the basement they commenced to walk down a lane or passageway in the direction of the cooler room door. It was dark, and plaintiff was holding Sweeney's left hand in his right and had his own left arm extended. The door of the cooler room was on the side of the lane to their right. Beyond the cooler room door, at the end of the lane, was a freight elevator. The elevator was equipped with a drop gate which was designed to close automatically when the elevator left the floor. Plaintiff was feeling for the closed gate expecting to reach it and thereby ascertain the position of the cooler room door. The gate was open, and the elevator was above the floor so that both Sweeney and plaintiff upon reaching the pit plunged into it and sustained injuries.

■ 1 Mason Minn. St. 1927, § 4291, is peculiar to this state and has often been construed by this court. Of necessity, any case arising under it must depend upon its own facts. Plaintiff, of course, likens the case at bar to those cases in which we have held that there was no related purpose or furtherance of a common enterprise. Gile v. Yellow Cab Corp. 177 Minn. 579, 225 N. W. 911; Duus v. Duus, 181 Minn. 232, 232 N. W. 114; Horgen v. Franklin Co-op. Creamery Assn. 195 Minn. 159, 262 N. W. 149; Anderson v. Interstate Power Co. 195 Minn. 528, 263 N. W. 612; Taylor v. Northern States Power Co. 196 Minn. 22, 264 N. W. 139. Defendant, on the other hand, relies upon the cases where we have held the other way. Uotila v. Oliver I. Min. Co. 165 Minn. 475, 206 N. W. 937; Rasmussen v. George Benz & Sons, 168 Minn. 319, 210 N. W. 75, 212 N. W. 20; Behr v. Soth, 170 Minn. 278, 212 N. W. 461; Olson v. Thiede, 177 Minn. 410, 225 N. W. 391; McGrath v. Northwestern Trust Co. 178 Minn. 47, 225 N. W. 901; Ott v. St.

Paul Union Stockyards, 178 Minn. 313, 227 N. W. 47; Prebeck v. Village of Hibbing, 185 Minn. 303, 240 N. W. 890; Thornton Bros. Co. v. Reese, 188 Minn. 5, 246 N. W. 527; Egan v. E. A. Brown Co. 193 Minn. 165, 258 N. W. 161.

No two cases are alike, and it would be futile to attempt to distinguish or liken the facts in this case to any we have heretofore decided. The general principles applicable to a test of whether or not the statute applies are well set out in the Rasmussen case. It was there said [168 Minn. 324]:

"Business is related when the parties are mutually or reciprocally interested in a commercial way, or where the business of one has a necessary relation toward or in conjunction with the other."

Here the Blatz company and the defendant were mutually interested in a commercial way. The service of the defendant was complementary to that of the Blatz company. Cool storage was apparently a vital part of the distribution service. It had a necessary relation to, and was in conjunction with, the Blatz company's sale and distribution of its products. The Blatz company and the defendant each had access to and partial control of the stored product. The employe of defendant worked in conjunction with those of the Blatz company in the furtherance of the common enterprise, which was the preservation of the beer for distribution. The stock in the cooler rooms could be moved out only after Anderson had honored the Blatz company's requisition. The beer was owned by the Blatz company and the cooler rooms by the defendant. It could not be moved out until the Blatz company ordered it moved and then only with the aid of defendant's employes. Accordingly, both firms had to act conjunctively in regard to disposition of the stored product.

Anderson kept a lookout for damaged kegs and reported any "leakers" to plaintiff so that they could be repaired or disposed of. They also coöperated in checking the stock. Although the facts are altogether different from those in the Rasmussen case, we think the defendant was engaged on the premises where the injury was received in a related purpose with the Blatz company in the further-

ance of the enterprise of storing and distributing beer. The facts here are, if anything, more persuasive than those in the Rasmussen case. For these reasons we are convinced that § 4291 is applicable.

■ The trial court, after making certain allowances for medical expenses and for a healing period as prescribed by subd. (c) of 1 Mason Minn. St. 1927, § 4274, limited the amount of plaintiff's recovery under the compensation act. There is no specific provision in the act covering permanent partial disability of two legs, but the trial court applied § 4274, subd. (c), paragraphs (41) and (19), which provides for partial permanent disability to one leg. It then doubled the length of time during which compensation is to be paid. Plaintiff contends that his compensation should be governed by paragraph (44) of § 4274, which provides for permanent partial disability not otherwise specifically provided for in the act. Plaintiff's duties required that he be very active, and there is medical testimony to the effect that his future physical activity will be permanently impaired. It is apparent that he will never have the same freedom of movement. To what extent he will be able to pursue gainful employment is uncertain, as is also the effect of the injury upon his earning power. Certain it is that his injuries will be a distinct handicap. At the time of the trial he was still unable to work. The sections of the statute applied by the trial court are among those provisions that provide definite compensation for stated injuries. The injuries here are not therein enumerated. But it is obvious that a 33 1/3 per cent disability of both legs is a more severe handicap than double such a disability to one and that the legislature in failing specifically to provide for such an injury intended to leave subd. (44) applicable. If and when plaintiff obtains employment the defendant has its remedy under the act.

■ The elevator shaft into which plaintiff fell was guarded by a gate or door which was designed to close automatically by a trip arrangement when the elevator left the floor. It had been closed when plaintiff had previously observed it. The gate had not been inspected for many years. There is evidence that it did not operate as it was designed to because the grooves in which it moved had become sticky with sugar dust. It was open after the accident.

Plaintiff at the time of the accident was groping his way in the dark, relying upon the gate's being closed and expecting to collide with it. The jury might find that he reasonably relied upon the assumed fact that the door was closed. Plaintiff was a frequent visitor to the cooler room, and he had been informed of this route of entry thereto by Anderson. Failure to keep the gate closed or to warn plaintiff that it was not closed was sufficient to make defendant's negligence a jury question.

■ Defendant urges that the contributory negligence of plaintiff was so conclusively shown that we must, as a matter of law, decide that issue in its favor. Several times previously when plaintiff and Anderson had gone to the cooler room Anderson had turned on lights by switches located in the lane in which plaintiff was traveling. Plaintiff made no attempt to turn on the lights or locate the switches by which they might be turned on. Apparently the only hazard in the basement was the unguarded elevator pit. Theretofore the pit had always been guarded by a gate. We have examined several of the cases cited by defendant in support of its contention that, in similar cases, the courts have held the plaintiff guilty of contributory negligence as a matter of law. Those cases are easily distinguishable on the facts. In many of those cases the injured party who was proceeding in the dark was doing so either without sufficient caution or on premises wholly unfamiliar to him. Walking in the dark is not negligence *per se*. The rule deducible from the cases seems to be that a higher degree of care is necessary in darkness than in light. With that rule we have no quarrel. It is sound and logical. But here were premises with which plaintiff was familiar and over which he had traveled many times in the light. He was carefully feeling his way along expecting to collide with the gate, which the jury might well have found he had reasonable assurance would be in a position to protect him against an accident of this nature. His contributory negligence was a fact question. A jury has determined that issue in his favor. We think its determination of the question to be well supported by the evidence.

The order denying defendant's motion for judgment notwithstanding the verdict or a new trial is affirmed.

The case is remanded with directions for further proceedings consistent with this opinion.

AFTER REARGUMENT.

On November 13, 1936, the following opinion was filed:

LORING, JUSTICE.

Upon further consideration of the matter contained in paragraph numbered 2 of the opinion, relating to the extent of recovery under the workmen's compensation act, we have concluded that the trial court was right in its award of compensation and that it properly made its award under paragraphs (19) and (41) of subd. (c), § 4274, 1 Mason Minn. St. 1927, which provide:

"(19)   For the loss of a leg so close to the hip that no effective artificial member can be used, sixty-six and two-thirds per centum of the daily wage at the time of injury during two hundred (200) weeks."

"(41)   In cases of permanent partial disability due to injury to a member, resulting in less than total loss of such member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss of the respective member, which the extent of injury to the member bears to its total loss."

and § 4326, subd. (k), which provides:

"Wherever in this act the singular is used, the plural shall be included;   *   *   *"

This is the construction which the industrial commission has placed upon these provisions for a long period of time. Our order is therefore amended so as to affirm both of the trial court's orders.