P. BRONSTEIN & COMPANY, INCORPORATED, PROSECU-
TOR-RESPONDENT, v. FANNIE HOFFMAN, DEFENDANT-
APPELLANT.

Submitted October 30, 1936—Decided January 22, 1937.

For the appellant, *H. David Zerman.*

For the respondent, *Michael N. Chanalis.*

The opinion of the court was delivered by

HEHER, J. This is a workmen's compensation case. The essential question is whether the widow and dependent children of the deceased employe, whose death ensued from an accident arising out of and in the course of his employment, are concluded by what is conceded to have been a compromise of their claim for compensation under the statute (*Pamph. L.* 1911, *pp.* 134, 763, as amended), then disputed by the employer as to "both liability and coverage." Conceiving that the controversy as to liability has since, in another case, been judicially resolved against the employer, the award of additional compensation made in the bureau, and affirmed in the Court of Common Pleas, is not now questioned on that ground. The Supreme Court, in granting the employer's application for a *certiorari,* found a distinction between "a mere agreement between the parties without judicial sanction" and a settlement approved by the commissioner "after hearing," and ruled that the case in hand fell into the latter category and the commissioner's "approval of the settlement," as distinguished from "an agreement to compromise," constituted a "final determination of the claim so as to bar further proceedings." On the return of the writ, judgment was entered accordingly. It seems to be conceded that the instant petition, presented to the bureau on January 21st, 1933, was filed within the time limited by the statute, if what has been termed "the final close-out" is not conclusive of the dependents' rights under the statute.

Plainly, there was no examination nor adjudication of the merits by the deputy commissioner. The employer "disputed both the employment and the cause of death;" and it was stipulated that the payment so provided was not to be regarded as "an admission of the liability claimed, but made for the

purpose of terminating the dispute and all further litigation between the parties." The widow covenanted not to "move to reopen this proceeding or to set aside this agreement upon any ground whatsoever, or to institute any suit, action or proceeding based upon the accident and death mentioned herein, provided the respondent [employer] performs the terms hereof." The limited scope of the inquiry is exhibited by the following colloquy between the commissioner and the deceased employe's widow and her counsel: "The court: What is the basis of the settlement in this case? Mr. Meehan: $3,500 for the petitioner and $500 counsel fee to be paid by the respondent. The court: What is this in the nature of? Mr. Meehan: It is a death claim involving a widow and two children, one child is nine years old and the other child is seventeen. Two partners form the corporation, one is the president of the corporation and the other is the treasurer. The treasurer of the corporation went out on the building and fell off the roof and was killed and now they maintain that he is not covered by the policy. The court: Is this a lump sum settlement? Mr. Meehan: Yes. The court: Well, I don't know whether I will approve it in this case. You say it is a death case with a widow and a child nine years of age? * * * Now, Mrs. Hoffman, this case has been settled on the basis of $3,500. Ordinarily the case would be worth about $6,800, but the company has agreed upon a settlement on the basis of $3,500, the question at issue being that they claim your husband was not an employe of the company but he was an owner of the company, and there is a serious legal question as to their liability. There is also a serious legal question as to the coverage by the insurance company on their policy. Of course if they are not compelled to cover there would be no money to cover this case. I understand you have been over the matter with your attorney? A. Yes. Q. Are you satisfied to settle on this basis? A. Yes, I am satisfied to settle." And so, without more, the "settlement" and "discontinuance of the proceeding," as stipulated, were "approved" by the commissioner.

In so far as it purports to effect an irrevocable surrender of a right to compensation granted by the statute, the agreement,

notwithstanding the approval of the bureau, runs counter to the policy of the law and is voidable, if not void. This court has so construed the act. Its adjudications distinguish between a proceeding in which the asserted liability under its provisions has been litigated, and a final determination on the merits had, and a disposition that in essence is a mere agreement of compromise approved by the compensation bureau. In the first case, the judgment is final and conclusive; in the latter, the element of finality is lacking. *Herbert* v. *Newark Hardware, &c., Co.,* 107 *N. J. L.* 24; *affirmed,* 109 *Id.* 266; *Federated Metals Corp.* v. *Boyko,* 11 *N. J. Mis. R.* 807; *affirmed,* 112 *N. J. L.* 87; *Thomas* v. *Liondale Bleach Dye and Print Works,* 10 *N. J. Mis. R.* 255; *affirmed,* 110 *N. J. L.* 27; *George Palm Construction Co.* v. *Bahr,* 10 *N. J. Mis. R.* 756; *affirmed,* 110 *N. J. L.* 455; *Ecken* v. *O'Brien,* 115 *Id.* 33; *affirmed,* 116 *Id.* 94.

And where the agreement was intended by the parties to be a final disposition of the claim for compensation, and full payment has been made in accordance with its terms, the sum so paid, if less than that prescribed by the statute, is considered merely a part payment of compensation within the intendment of paragraph 5 of chapter 149 of the laws of 1918 (*Pamph. L., pp.* 429, 431), as amended by chapter 280 of the laws of 1931 (*Pamph. L., p.* 708), and clause (h) of paragraph 23, section III, of the Compensation act, as amended by chapter 279 of the laws of 1931 (*Pamph. L., pp.* 704, 707), limiting the time for the filing of the petition for compensation. The test is whether the compensation so paid is but a part of that which "ought to be paid" under the statute, and not whether it is the entire sum agreed to be paid in full satisfaction of the claim arising under the statute. *Lusczy* v. *Seaboard By-Products Co.,* 101 *N. J. L.* 170; *Ecken* v. *O'Brien, supra.* Such an agreement, upon approval, does not have the force of a judgment or arbitral award.

Moreover, there are other provisions of the statute pointing to this fundamental policy. Paragraph 23 (e) of the original act (*Pamph. L.* 1911, *pp.* 134, 144), as amended by chapter 174 of the laws of 1913 (*Pamph. L., pp.* 302, 311), and again

by chapter 92 of the laws of 1919 (*Pamph. L., pp.* 201, 211, 212), ordains that "no agreement, composition or release of damages made before the happening of any accident, except the agreement defined in section 2 of this act, shall be valid or shall bar a claim for damages for the injury resulting therefrom, and any such agreement other than that defined in section 2 herein is declared to be against the public policy of this state;" and, by paragraph 18, the peremptory duty was imposed upon the employer, in language that has not since been altered, to pay compensation to the disabled employe, or his dependents in the event of mortal injury, "according to the schedule" therein contained. The act prescribes weekly payments, based upon the resultant loss of wages, during disability or dependency where the injury is fatal. Paragraph 21 of the original act, as amended by chapter 174 of the laws of 1913 (*Pamph. L., pp.* 302, 309), relating to commutation of compensation payable under the act, enjoins the enforcement tribunals to "constantly bear in mind that it is the intention of this act that the compensation payments are in lieu of wages, and are to be received by the injured employe or his dependents in the same manner in which wages are ordinarily paid." And, by chapter 174 of the laws of 1913, *supra,* paragraph 20 was supplemented by the provision that no agreement between the parties for a "lesser sum" than that determined to be due by the Court of Common Pleas shall bar a determination of the "controversy upon its merits."

Then came the Workmen's Compensation act of 1918, creating and investing the bureau with exclusive original jurisdiction of all claims for compensation under the act. *Pamph. L.* 1918, *p.* 429. Paragraph 4 explicitly lays down a standard for the guidance of the bureau in passing upon agreements for compensation. It declares that such an agreement shall not have binding force "unless approved by the bureau;" and then it goes on to provide that if an agreement for "lawful and adequate compensation, approved by the bureau," is not filed with the bureau within a given time after the happening of the injury, that tribunal shall undertake an inquiry with a view to effecting a settlement or bringing about a determina-

tion of the controversy in an adversary proceeding. And thus the affirmative exercise of the bureau's power of approval is conditioned upon an agreement for *lawful and adequate* compensation. In 1921, paragraph 20 was amended (*Pamph. L., p.* 736) to provide that "no agreement between the parties for a sum other than that which may be determined to be due by the commissioner, deputy commissioner or referee, or the judge of the Court of Common Pleas upon appeal shall operate as a bar to the determination of a controversy upon its merits, or to the award of a different sum, if it shall be determined by the said commissioner, deputy commissioner, referee or judge that the amount agreed upon is less or more than the injured employe of his dependents are properly entitled to receive."

We find no provision in the statute vesting in the bureau authority to approve a compromise of a valid claim under its provisions for less than the sum thereby prescribed, or of a claim outside of the act erroneously asserted to be within its terms. The policy of the law is not served by reduced payments to one entitled to its benefits; nor is it advanced by providing compensation to one not within the statutory class. The approval by the bureau of a compromise agreement made with one not so entitled is nugatory; such action is *coram non judice*. *London Guarantee and Accident Co.* v. *Sterling*, 233 *Mass.* 485; 124 *N. E. Rep.* 286. At the time of the submission of the agreement for approval, the employer denied the existence of the relationship requisite for jurisdiction in the bureau; this was primarily the basis of the compromise.

Chapter 301 of the laws of 1913 (*Pamph. L., p.* 617), as amended by chapter 225 of the laws of 1928 (*Pamph. L., p.* 400). not adverted to by counsel, empowering a guardian of the person and property of an infant entitled to compensation under the statute to "act for such infant, or minor, to the same extent as a duly appointed next friend or guardian *ad litem* appointed by any court of law," and "to compromise and make composition in behalf of such infant or minor of any disputed claim for compensation," does not lead to a broader interpretation. Assuming, but not conceding, that the term "compromise" does not take a

limited and special meaning from the associated word "com-position" (a special provision is to be interpreted in the light of the general legislative scheme), the exercise of this particular authority is likewise subject to the approval of the bureau, "upon presentation of the facts and terms" of the agreement. And so, in the absence of specific provision, the exercise of this power of approval is, in turn, controlled by the only standard laid down in the statute, *i. e.,* that the agreement shall provide for "lawful and adequate compensation."

These statutes are in *pari materia* and are to be construed together so as to effectuate the evident general policy. Separate provisions are to be construed in the light of the statute as a whole. If in conflict, they are to be harmonized and reconciled, so far as possible, to accord with the general legislative intent and purpose.

The manifest purpose of the requirement of the bureau's approbation of an agreement for compensation was to secure full compliance with the statute, and thus to safeguard the injured employe, and the dependents of one suffering fatal injury, against deprivation of the rights thereby conferred. The agreement is required to be consonant with the law applicable to the facts found. Nothing short of this will suffice. These protective measures are outstanding; their object is to secure the beneficent policy of the act. They were designed to prevent the parties from contracting out of the statute after the accident, just as paragraph 23 (e), *supra,* restricts the exercise of the parties' contractual power to the statutory agreement prior to its occurrence. This contract is of concern to the state. The legislative policy is obviously grounded in social and economic considerations. The common interest vindicates the incidental restraint upon the liberty of contract. *Madera Sugar Pine Co.* v. *Industrial Accident Com.,* 262 *U. S.* 499; 43 *S. Ct.* 604; 67 *L. Ed.* 1091; *New York Central Railroad Co.* v. *White,* 243 *U. S.* 188; 37 *S. Ct.* 247; 61 *L. Ed.* 667. Beginning with *Lusczy* v. *Seaboard By-Products Co., supra,* decided in 1925, this court has consistently held this to be the genius of the statute; and the

legislature has not seen fit to exercise its modifying power. It is significant that the legislature, in amending paragraph 21 (f) in 1931, several years after the last mentioned case was decided, limited to formal awards the review for increased or diminished incapacity.

While the English Compensation act is not in all its terms and provisions identical with ours, the House of Lords, in construing the lump-sum provision, applied this general principle. *Russell* v. *Rudd,* 1923, *A. C.* 309; 12 *B. R. C.* 171. Lord Carson, alone dissenting, held to the view that there should be no interference with "the inherent right of settling or compromising claims," in the absence of "clear words taking away that right;" and these he did not find in the act. He pointed out that, under the construction given by the majority (page 331 of 1923 *A. C.*) "the parties, however willing they may be to agree, or however beneficial the agreement may be, will be left to litigate such disputed questions in accordance with the procedure laid down in the Workmen's Compensation act."

The compensation bureau is a creature of the statute. Its jurisdiction is special and limited; and it is invested only with such authority as is expressly conferred, or such as is by fair implication and intendment incident to and included in the authority expressly granted for the enforcement of the statute. Any reasonable doubt of the existence of a particular power in the bureau is to be resolved against the exercise of such authority. Compare *Newark* v. *Civil Service Commission,* 115 *N. J. L.* 26.

The employer maintains there is a distinction between the cited adjudications from this state and the case in hand, in that the former class deals with the right to additional compensation for an increase of disability occurring subsequent to the making and approval of the agreement between the parties. But there is none in principle. The statute makes no such classification. In the case of *Federated Metals Corp.,* v. *Boyko, supra,* the claim was "compromised as a complete and final disposition;" and in *Ecken* v. *O'Brien, supra,* where the existence of the basic elements of liability was also denied, the commissioner approved "a compromise and agreement"

as a "full and final settlement of all claims of the petitioner and as a final adjudication of this litigation." And in *George Palm Construction Co.* v. *Bahr, supra,* there was a "compromise on the question of the extent of damages."

Furthermore, the employer's principal contention, carried to its logical conclusion, would deprive the injured employe, where the compromise was limited to the *quantum* of the incapacity flowing from a conceded compensable injury, of a review on the ground of an increase of disability occurring subsequent thereto, for section 21 (f), as amended by chapter 279 of the laws of 1931 (*Pamph. L., p.* 704), confines such review to formal awards; an agreement between the parties "may be modified" only "by a subsequent agreement."

The judgment of the Supreme Court is accordingly reversed, and the judgment of the Court of Common Pleas affirmed.

*For affirmance*—TRENCHARD, HETFIELD, DEAR, COLE, JJ. 4.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, HEHER, PERSKIE, WELLS, WOLFSKEIL, RAFFERTY, JJ. 8.