FRANK COLARUSSO, PETITIONER-RESPONDENT, v. SAM BAHTO, TRADING AS LIBERTY CLEANERS AND DYERS, RESPONDENT-PROSECUTOR.

Submitted May 5, 1942—Decided July 22, 1942.

Before Justices BODINE, HEHER and PERSKIE.

For the prosecutor, *Cox & Walburg* (*Arthur F. Mead*, of counsel).

For the respondent, *Jacob R. Mantel.*

The opinion of the court was delivered by

PERSKIE, J. The basic question requiring decision, on the facts of this workmen's compensation case, is whether, as claimed by the employer and employee, a wrong basis or method was employed in determining the question of compensable disability awarded the employee.

On May 25th, 1938, Frank Colarusso, hereafter referred to as petitioner, a laborer, 29 years of age, was employed as a general helper by Sam Bahto, trading as Liberty Cleaners and Dyers, hereafter referred to as respondent. While so employed, petitioner sustained an accident which concededly arose out of and in the course of his employment. Pipes which petitioner was removing from a tank "fell into a pool of acid causing same to splash in each [of his] eyes."

What were the disabilities flowing from the personal injuries which the petitioner sustained as a result of the

accident? *Cf. Everhart* v. *Newark Cleaning & Dyeing Co.,* 119 *N. J. L.* 108, 114; 192 *Atl. Rep.* 294. The record discloses that on November 7th, 1938, petitioner filed a claim petition for compensation with our Workmen's Compensation Bureau. In this petition he alleged that as a result of the accident his "left eye" was "entirely removed" and that his "right eye" suffered "a fifty per cent. (50%) loss of vision." Respondent answered admitting his liability for the loss of petitioner's left eye on a basis of permanent liability for 100 weeks (*N. J. S. A.* 34:15-12.s). Respondent further answered that he was voluntarily making payments due petitioner and which payments as made were accepted by petitioner; that there was no "causal relationship" between the accident and injury to the right eye; and that there was in fact no additional disability to the right eye as a result of the accident.

In this posture of the cause, the respective parties agreed "to settle" petitioner's claim, subject to the approval of a deputy commissioner of the Bureau, for 25 weeks for temporary total disability, plus a permanent partial disability based upon 35% of permanent total disability, or 175 weeks, plus allowances of fees for doctors, attorneys, &c. The proposed settlement was approved and a determination of facts and rule for judgment, consented to in writing by the parties, was entered accordingly, on March 13th, 1939, by the deputy commissioner.

Properly treating the settlement as a nullity (*P. Bronstein & Co., Inc.,* v. *Hoffman,* 117 *N. J. L.* 500; 189 *Atl. Rep.* 121; *Ruoff* v. *Blasi,* 117 *N. J. L.* 47; 186 *Atl. Rep.* 581; *affirmed,* 118 *N. J. L.* 314; 191 *Atl. Rep.* 877), petitioner on January 15th, 1940, filed a second claim petition for compensation. *Cf. Stroebel* v. *Jefferson Trucking and Rigging Co.,* 124 *N. J. L.* 210; 11 *Atl. Rep.* (2d) 297; *affirmed,* 125 *N. J. L.* 484; 15 *Atl. Rep.* (2d) 805. In this petition he again alleged that as a result of the accident on May 25th, 1938, his "left eye" was "entirely removed," his "right eye" had a 50% loss of vision and additionally alleged that he suffered "injury to both eyes and to [his] nervous system." Respondent answered denying liability—beyond the terms of the settlement of petitioner's claim as aforesaid—

and further answered that he was making payment in accordance with the award based on the settlement.

A formal hearing on the merits of the second petition and answer was held before a deputy commissioner other than the one who approved the said settlement between the parties.

The issues were rather narrow. There was no dispute as to the temporary disability for 25 weeks. Nor was there any dispute as to the loss of petitioner's left eye. Nor was there any serious dispute as to the neurosis, a "cumulative disability" (*Sigley* v. *Marathon Razor Blade Co., Inc.*, 111 *N. J. L.* 25, 29; 166 *Atl. Rep.* 518), suffered by him as a result of the accident and for which disability petitioner's witnesses placed a 12½% of total permanent disability. There was, however, a very sharp dispute as to the injury to petitioner's right eye. It will serve no purpose presently to restate the testimony adduced on this dispute. Suffice to observe that each party offered lay and medical witnesses who, generally stated, testified in support of the contention of the party for whom they testified. The deputy commissioner in the Bureau reached the conclusion "that there [was] little if any injury to the right eye from the accident * * *." He further concluded that "the compensation which employer had agreed to pay petitioner [was] adequate for his injuries resulting from said accident." He, therefore, found and determined independently that petitioner "incurred personal injuries to his *eyes* and *neurosis*" as a result of the accident. (Italics supplied.) Accordingly, he allowed petitioner temporary disability for 25 weeks and a partial permanent disability based upon 35% of total permanent disability, or 175 weeks, and because these allowances "did not exceed" those offered by respondent to the petitioner, and because he concluded that certain medical fees and expenditures were "unnecessary and unauthorized" the deputy commissioner made no allowances for "medical or counsel fees."[*]

Petitioner appealed to the Union County Court of Common Pleas. That court doubted the extent of the injury to the right eye as claimed by petitioner. That doubt arose out of the fact that petitioner "could run about the streets in traffic" and that petitioner made "no attempt" to remedy

the condition of his right eye by wearing corrective glasses. Notwithstanding that doubt, the court held that petitioner's right eye "\* \* \* no doubt [had] some disability" but such disability was embraced within the 35% of total disability allowed. Accordingly, it refused to grant further compensation on this score. It did, however, allow a 12½%, or 62½ weeks, of total disability for the neurosis on the ground that the petitioner's first claim made no claim for such injury, and, therefore, no allowance for same was made by the Bureau. The end results of the holding by the Pleas were that petitioner's compensation for partial permanent disability was increased from 35%, or 175 weeks, to 47½%, or 237½ weeks, and that certain allowances were made for medical and counsel fees.

On application of respondent, this court allowed a writ of *certiorari* on the ground that the "basis and method" for the calculation by the Pleas presented "reasonably debatable questions." *Colarusso* v. *Sam Bahto, &c.* (No. 250 October term, 1941, unreported opinion filed December 22d, 1941). Thereafter a writ of *certiorari* was allowed to petitioner. Thus these cases, which by stipulation, were consolidated and argued together are before us on cross-writs and present the question first stated as requiring decision.

We desire, at the outset, to mark the fact that in the discharge of our duty to appraise the evidence and to determine the facts in accordance with the preponderance of the probabilities (*Cf. McCadden* v. *West End Building and Loan Association,* 126 *N. J. L.* 1, 4; 17 *Atl. Rep.* (2d) 65; *affirmed,* 127 *N. J. L.* 245; 21 *Atl. Rep.* (2d)' 737), we have entirely disregarded the award based on the settlement between the parties. For as already observed that award, save as to its historical value, was without legal efficacy. *P. Bronstein & Co., Inc.,* v. *Hoffman, supra; Ruoff* v. *Blasi, supra.*

What then was the extent of the disabilities flowing from the injuries as a result of the accident?

Prior to the accident, petitioner had no trouble with his eyes. He was "a very quiet fellow" and "very steady at his work." We gather from the proofs that he could reasonably be classified as an easy going type of a person. After the

accident, petitioner became a "restless," "irritable" and "very nervous" person. He "feared himself." Little wonder! When he poured his coffee he could not "judge" the "center of the cup" and when he tried to place the ashes from his smoking into the ash tray he would catch the "side" and not the "center" of the tray as a result of which he would "spill" the ashes on the floor; he would "bump" into people on the street, he could not enjoy "dancing," nor play "shuffle boards," nor could he enjoy the "movies" because they made his eye "get watery and burn." He cut his hand (requiring two stitches) because he "could not see very well" while at work. He could not hold on to a job. As soon as the fact became known that he was a one-eyed man, he would be let out. Much was made in the Bureau and in the Pleas of the fact that petitioner walked the streets of Summit alone and in a rather "fast," or in a "running" or in a "partly running" gait. As we read the pertinent testimony on this subject we conclude that petitioner's manner of walking was not because he suffered no partial permanent disability to his right eye but rather because of the neurosis which he suffered as a result of the accident. We find as a fact that the neurosis created a partial permanent disability. It was a "separate and independent injury," a "cumulative disability" (*Sigley v. Marathon Razor Blade Co., Inc., supra*), the compensation for which was included in the award of the Pleas of 47½% of total permanent disability.

In addition to all that has been written, it appears that from the time of the accident petitioner was under medical and surgical care. He suffered great pain. He was obliged to take sedatives to fall asleep. Notwithstanding that he willingly submitted to and faithfully complied with the suggested treatment of his physicians (including the wearing of glasses), the vision of his right eye became progressively poorer. True there is a sharp conflict in the testimony between the treating and respective expert medical testimony and while this testimony varies from no disability (according to the experts for respondent) to a disability up to 75% to 80% or more of central vision (according to the testimony of expert medical testimony for petitioner), nonetheless, two

experts for respondent placed a loss from 44% to 50% of partial permanent disability of petitioner's right eye providing he was telling the truth as to his vision. And there is nothing to indicate that petitioner is a malingerer. The fact that petitioner, according to his witnesses, had about a 20% to 25% central vision in his right eye was sufficient "to carry him through the streets * * *."

In light of these and all other proofs, we find as a fact, based upon the preponderance of the probabilities, that petitioner did suffer an injury which resulted in a partial permanent disability of his right eye.

Thus we have the factual situation that petitioner suffered the loss of his left eye, a partial permanent disability of his right eye and a neurosis. In view of what has already been written concerning the award for the neurosis, the remaining question is: How should compensation for the disabilities to petitioner's eyes be computed?

It is clear that had petitioner suffered the loss of one eye only, he would have been entitled to the prescribed percentage of his daily wages for 100 weeks. *N. J. S. A.* 34:15-12.s. Had he suffered the loss of both eyes, he would have been entitled to compensation on the basis of total and permanent disability according to the provisions of paragraph "b" of *N. J. S. A.* 34:15-12. And it is also clear that "physical injuries to an eye that do not constitute loss of an eye" are compensable under subdivision (w) of *N. J. S. A.* 34:15-12. *McCadden* v. *West End Building and Loan Association, supra* (at *p.* 6).

We utterly fail to discern any justification, under the stated provisions of our Workmen's Compensation Act, in support of respondent's calculations and arguments based thereon, namely, (1) that the compensation for the loss of petitioner's left eye should be calculated on the statutory provision of 100 weeks ( *N. J. S. A.* 34:15-12s), and (2) that compensation for the partial permanent disability to petitioner's right eye should be calculated on the basis of the percentage that partial permanent disability bears to statutory period of allowance of 100 weeks for the loss of an eye. If that method of calculation were followed to deter-

mine the compensation the result might well work a great hardship on a workman. Let us suppose that a workman, as the result of a compensable accident, suffered the loss of his left eye and a 99% of total permanent loss of vision in his right eye. For practical purposes, he would be a blind man. Let us further suppose that another workman as a result of the same compensable accident suffered the total loss of both of his eyes. Each is a blind man. But under the argued method of calculation, the first workman would receive compensation for 199 weeks while the second workman would receive compensation for 500 weeks. No word, nor judgment of this court shall ever sanction such an unjust result.

It is clear that petitioner suffered a disability greater than the loss of one eye (*N. J. S. A.* 34:15-12.s). It is equally clear that he suffered a "lesser" disability than a total disability of both of his eyes (*N. J. S. A.* 34:15-12.v). Under such circumstances, we do discern a clear legislative intent that compensation be computed and awarded petitioner under subdivision (w) of *N. J. S. A.* 34:15-12. Under this subdivision "all lesser and other cases involving permanent loss * * *" is determined "as a percentage of total and permanent disability" and the "duration of the compensation is to be a corresponding portion of *five hundred weeks.*" (Italics supplied.) Thus it is that the true test of liability is invoked and applied. This test is not necessarily the immediate impairment of earning power but rather the loss resulting from personal injury which detracts from the "former efficiency" of the workmen's "body or its members in the ordinary pursuits of life." And thus it is that "indemnity for personal injury sustained" is satisfied. *Cf. Everhart* v. *Newark Cleaning and Dyeing Co., supra* (at *pp.* 111, 112).

In the case of *Flanagan* v. *Charles E. Green & Sons,* 121 *N. J. L.* 327; 2 *Atl. Rep.* (2d) 180; *affirmed,* 122 *N. J. L.* 424; 5 *Atl. Rep.* (2d) 742, the petitioner suffered a leg injury resulting in a partial permanent disability of 50% of total and an arm injury resulting in a partial permanent disability of 35% of total. Compensation for these different members of the body was calculated on the applicable provisions, *N. J. S. A.* 34:15-12.v (leg) and *N. J. S. A.*

34:15-12.p (arm) and not under *N. J. S. A.* 34:15-12.w. The basis for that holding was that under the stated circumstances paragraph b of 34:15-12 (permanent total disability) has "no bearing upon calculation of compensation for partial permanent disability of members." *Flanagan* v. *Charles E. Green Co., supra* (at *p.* 331). While no reference is made to that holding, we do not wish to pass it *sub silentio.* For whatever effect that holding may have upon that portion of *N. J. S. A.* 34:15-12 (w) which provides that "In cases in which the disability is determined as a percentage of total and permanent disability the duration of the compensation shall be a corresponding portion of five hundred weeks," the facts upon which that holding was based are clearly distinguishable from the facts in the case at bar. In that case different members of the body were involved. In the case at bar two of the like members of the body are involved.

We are of course not concerned with the position counsel for petitioner may have taken (that the judgment of the Pleas should not be disturbed) on the argument for a writ of *certiorari* by respondent to review the judgment in the Pleas. We are concerned solely with the question as to whether petitioner received the compensation justly due him.

Nor are we concerned with the reasoning of the court below. Our concern is whether a right result was reached.

In fine, we are of the opinion that the proofs adduced fully supports the award in the Pleas. We so hold.

The writs are dismissed, without costs to either party.