## ANTON WALLENSTEIN, PLAINTIFF, v. HARTFORD ACCIDENT AND INDEMNITY COMPANY, A CORPORATION OF THE STATE OF CONNECTICUT, DEFENDANT.

Decided October 18, 1943.

For the plaintiff, *Louis M. Mallin.*

For the defendant, *Cole & Cole.*

BURLING, C. C. J. This is an action at law, cast in contract. It has been submitted to and tried before me, sitting without a jury, at the Atlantic County Circuit and submitted to the court on a stipulation to that effect and a stipulation of facts.

The plaintiff, Anton Wallenstein (a resident of the County of Atlantic in the State of New Jersey) was on, and prior to March 29th, 1938, an employee of Tides Operating Co., Inc., a corporation, being employed by said company at its place of business known as the "Tides Hotel" at Miami Beach, in the State of Florida.

The defendant, Hartford Accident and Indemnity Company, at said time, was an insurance company duly authorized to do business as such under the laws of the State of Florida.

Prior to the aforesaid date, the defendant, for a consideration issued its policy of insurance covering the plaintiff's employer for workmen's compensation risks in the State of Florida, which policy was in force at the time of the injury to the plaintiff hereinafter referred to.

On or about the 29th day of March, 1938, the plaintiff was injured while in the employ of the Tides Operating Co., Inc.,

said injury being received by the plaintiff in such a way as to bring him within the provisions of the Workmen's Compensation Act of the State of Florida.

Pursuant to the terms of its policy the defendant insurance company entered into an agreement, a copy of which is annexed to the original complaint filed herein. Said agreement was filed with the Florida Industrial Commission, that being the administrative board of the State of Florida established under the Florida Workmen's Compensation Law.

The agreement contained the following provision for compensation for partial permanent disability, temporary disability having been previously paid without order: "that the said Anton Wallenstein shall receive compensation at the rate of $18 per week based upon an average weekly wage of $65 and that said compensation shall be payable for a period of one hundred (100) weeks beginning February 3d, 1939, from and including the * * * day of * * * month 19 * * * until terminated in accordance with the provisions of the Workmen's Compensation Law of the State of * * *." The word "of" may be disposed of as surplusage, probably resulting from the use of a printed form.

The defendant under the terms of said agreement, paid to the plaintiff 45 weeks compensation at the rate of $18 per week, making a total of $810, and then ceased payments alleging that disability had terminated.

Suit has been brought in a court of common law jurisdiction for alleged arrears of payments under said agreement between the plaintiff and the defendant.

Two propositions have been posed:

1—By the plaintiff: The agreement is binding until otherwise changed by action of the commission.

2—By the defendant (defendant's brief, page 3): (a) The defendant had the right to suspend. (b) It did in fact suspend the agreement.

If the defendant's contention is sound that the employer had the right to terminate payments at will, the agreement would be of little value. The employee had better submit his case to the commission immediately and obtain an award. Such a construction would be inconsistent with the purpose

of the act as declared in its title. One of the chief objectives is to require industries in the first instance to care for the casualties occurring therein.

The agreement provides that it is binding by its terms until terminated in accordance with the provisions of the Workmen's Compensation Law of the state. Agreements between employer and employee have been upheld and in fact suits have been instituted in this state upon such agreements. *Holzapfel* v. *Hoboken Manufacturers Railroad Co.* (*Court of Errors and Appeals*, 1918), 92 *N. J. L.* 193; 104 *Atl. Rep.* 209.

The entire act and particularly the administrative and procedural plan has been studied and reviewed in an endeavor to reach the legislative intent. The court has pondered over the framework of the act to ascertain the procedural method of reaching a change in condition where no award has been made.

The Florida Workmen's Compensation Act (1935), *F. S. A.*, §§ 440.01, *et seq.*, provides in its title the following recitation of purpose:

"An act to provide for and adopt a comprehensive Workmen's Compensation Law for the State of Florida; to provide compensation thereunder for disability or death resulting from an injury arising out of and in the course of employment; limiting, regulating and prohibiting resort to certain common law causes of action and/or defenses in cases falling within the purview of this act; imposing certain duties and exactions upon employers and/or employees falling within the scope of this law; defining the employments subject hereto and delimiting the application of this act as applied to other employments and setting up an agency of the state for the administration hereof."

Having been of comparatively recent enactment, Florida judicial pronouncement of manner of its construction is scant, but the principles relating to such statutes are very generally accepted and there are apparently no decisions of the State of Florida construing the Workmen's Compensation Act with regard to the matters raised in this issue to guide the court.

In the construction of workmen's compensation acts courts have held that they are to be interpreted in the light of, or so as to promote, their purposes and objects. 71 *Corp. Jur.* 341.

For instance in New Jersey: Workmen's Compensation Statute is a remedial law of prime import. It should be liberally and broadly construed. *O'Mara* v. *Kirch* (*Court of Errors and Appeals,* 1929), 106 *N. J. L.* 151; 147 *Atl. Rep.* 511.

The legislative policy is obviously grounded in social and economic considerations. *Bronstein* v. *Hoffman* (*Court of Errors and Appeals,* 1936), 117 *N. J. L.* 500; 189 *Atl. Rep.* 121; *Miciele* v. *Erie Railroad Co.* (*Supreme Court,* 1943), 130 *N. J. L.* 448 (at *p.* 456); 33 *Atl. Rep.* (*2d*) 586.

The act under consideration contains no provision for approval of a written agreement between employer and employee as is contained in the New Jersey Workmen's Compensation Act, *R. S.* 34:15–50; *N. J. S.* A. 34:15–50. Merely the reporting to the Commission of the fact of making first payment and suspension of payment, section 20 (c); *F. S. A.,* § 440.20 (3). Some states hold that where a statute requires the approval of an agreement by the Commission, it must be so approved to have the solemnity and effect of an award. Upon such approval, however, commission action is required to abrogate. *Silva* v. *Industrial Accident Commission of California et al.* (1924), 68 *Cal. App.* 510; 229 *Pac. Rep.* 870, 872; *Carpenter* v. *Globe Indemnity Co.* (1940), 65 *R. I.* 194; 14 *Atl. Rep.* (*2d*) 235 (at *p.* 239); *Gobeille* v. *Ray's, Inc.* (1940), 65 *R. I.* 207; 14 *Atl. Rep.* (*2d*) 241; *London Guarantee and Accident Co.* v. *Sauer* (1933), 92 *Colo.* 565; 22 *Pac. Rep.* (*2d*) 624.

A survey of the mode of cessation of payments is discussed in *Dodd on Administration of Workmen's Compensation* (1936).

The act contemplates and encourages prompt payment by immediate action of employer, unless right to compensation is controverted as evidenced by penalty provisions for delay. Section 20 (e); *F. S. A.,* § 440.20 (5).

The act in section 28, Acts 1935, chapter 17481, refers to

a change of condition, however, only where a compensation order has been made. The application thereunder could be made for modification of an award at any time within two years from the injury. This section was amended in 1941, of which more is hereinafter stated.

No other section specifically refers to a change of condition and especially where no award was made.

Where an employer initially controverts a claim, he is obliged to give notice of that fact. Section 20 (d). And then employee proceeds under section 25 (a) and files a claim under paragraph (a) thereof, and under paragraph (c) thereof, the Commission proceeds to a hearing, and then rejects the claim or makes an award, paragraph (e). *F. S. A.,* § 440.25 (1, 3).

Provision in section 20 (d) relates and is limited to initial right to controvert by the employer (must be made before twenty-one days after knowledge of injury).

Provisions of section 20 (c) and (h), *F. S. A.,* § 440.20 (3, 8), contemplate suspension of payment.

Where the employer suspends payments, he is obliged to notify the Commission under section 20 (c). The provisions of section 20 (h) in respect to the duties of the Commission to investigate and hold hearings are thereby invoked.

Webster's Dictionary defines "suspend" as follows: To cease temporarily from operation or activity—to stop payment or fail to meet obligations or engagements.

"Suspend as defined by Webster, among other things, means to cause to cease for a time, from operation or effect; as to suspend the *Habeas Corpus* Act; to suspend the rules." *Vaughan* v. *City of Searcy* (1940), 199 *Ark.* 585; 135 *S. W. Rep.* (2d) 319, 321.

To give effect to the word "suspend" may be the key to the solution of the problem herein. The sections (c) and (h) contemplate such action by the employer for any cause. If the employer believes a change of condition has occurred when no order has been made and if the employer in the *interim* before the Commission acts, believes he requires protection, he may, as he did in this case, suspend payments. The agreement stands until the cause of suspension is determined.

This construction seems to be borne out by the amendment of 1941 of section 28, which reads as follows:

"440.28 *Modification of Awards*—Upon their own initiative or upon the application of any party in interest, on the ground of a change in condition or because of a mistake in a determination of fact the Commission may at any time prior to one year after the date of the last payment of compensation, whether or not a compensation order has been issued, or at any time prior to one year after the rejection of a claim, review a compensation case in accordance with the procedure prescribed in respect of claims in section 440.25, and in accordance with such section, issue a new compensation order which may terminate, continue, reinstate, increase, or decrease such compensation, or award compensation. Such new order shall not affect any compensation previously paid, except that an award increasing the compensation rate may be made effective from the date of the injury, and if any part of the compensation due or to become due is unpaid, and award decreasing the compensation rate may be made effective from the date of the injury, and any payment made prior thereto in excess of such decreased rate shall be deducted from any unpaid compensation, in such manner and by such method as may be determined by the Commission. *Am.,* § 9, *ch.* 20672, 1941; *F. S. A.,* § 440.28."

The amendment implies the acknowledgment of the existing (at time of its adoption) effectiveness of an agreement to pay by the words "upon the application of any party in interest upon the grounds of a change in condition   *   *   * *whether or not a compensation order has been issued."*

The court has resorted to this amendment in its effort to aid its construction of the provisions of the act presently under review. An amendment to an act may be resorted to for the discovery of the legislative intention in the enactment amended. 25 *R. C. L.* 1064.

Pursuant to the provisions of paragraph 10 of the stipulation, I proceed to rule upon the admissibility of the matters therein referred to.

1—Letter of the Florida Industrial Commission to the defendant, dated April 3d, 1941, is admitted. It contains a

declaration of the rules of the Commission as to the form of notice to be given by the employer to the Commission of the suspension of payment contemplated by section 20 (c) as a basis for the Commission's action under section 20 (b).

2—Letter of W. D. Ullrich, addressed to the plaintiff, dated December 7th, 1939, is admitted. It contains a notice of suspension of payments and its cause therefor.

3—Letter of defendant by T. J. Chirgwin, to Florida Industrial Commission, dated January 3d, 1940, is not admitted. It is not relevant to the issue in this cause. Procedural provisions of the Compensation Act for notice by the employer for the cessation of payments is provided in section 20 (c) for the apparent purpose of bringing into play provisions of section 20 (h) to determine the factual question of disability.

4—Letter of defendant by T. J. Chirgwin, to the Florida Industrial Commission dated January 26th, 1940, is not admitted. It is irrelevant. It relates to the alleged proof of cause of cessation.

5—Letter of Commission to defendant, addressed to T. J. Chirgwin, dated January 31st, 1940, is not admitted. It is irrelevant. At the most it relates to marshalling information in relation to its duty under section 20 (h).

6—Letter of Dr. Harry Subin, addressed to Mr. Walter D. Ullrich, dated February 16th, 1940, is not admitted. It is irrelevant to this issue.

7—Letter of defendant by T. J. Chirgwin to Florida Industrial Commission, dated February 20th, 1940, is irrelevant and immaterial to this issue.

I find the facts to be as stated in the stipulation.

From a study of the agreement and the entire act, I am of the opinion and I so find that the agreement is binding until otherwise terminated by the Commission or the mutual action of the parties.

After consideration of the facts and law applicable thereto and arguments of counsel, the court finds in favor of the plaintiff in the stipulated amount (paragraph 13) of $990 plus interest and costs.

*Postea* may be prepared in accordance with the practice

outlined in French, Receiver, v. Higgins (Supreme Court, 1901), 66 N. J. L. 128; 48 Atl. Rep. 1007, and Supreme Court rule 113, N. J. S. A. tit. 2, and to contain the rulings upon letters referred to in paragraph 10 of the stipulation, with appropriate exceptions noted.