294 So.2d 641 (1974)
Albert WILLIAMSON, Jr., Petitioner,
v.
BUSH & LaFOE, Employer, et al., Respondents.
No. 44474.
Supreme Court of Florida.
May 8, 1974.
*642 David A. Maney, of Gordon & Maney, Tampa, for petitioner.
George N. Meros, St. Petersburg, for respondents.
L. Barry Keyfetz, Miami, for Academy of Florida Trial Lawyers, Workmen's Compensation Section, amicus curiae.
McCAIN, Justice.
This cause is before the Court on a petition for writ of certiorari to the Industrial Relations Commission from an order reversing the Judge of Industrial Claims. We have jurisdiction pursuant to Article V, Section 3(b)(3), Florida Constitution, F.S.A.
The claimant was injured when he fell from the edge of a roof where he was setting trusses, landing on the concrete slab below. Claimant suffered simultaneous independent injuries to both feet.
The carrier authorized subsequent medical attention. After the casts were removed the claimant was unable to regain full use of his feet. He was examined at different times over a period of several months by three orthopedic surgeons who rated the claimant's injuries at 10% disability *643 to the left foot and between 20% and 25% to the right foot. All three doctors recommended that the claimant return to work with the aid of a brace or a high topped shoe.
The claimant testified that he had a great deal of trouble standing for more than several hours at a time. He made one or two attempts to work but was only able to remain on the job for not more than four to five hours at a time. He testified that being on his feet for just a few hours caused his feet to swell painfully. Another witness supported this testimony. He further stated that he could not perform many of the tasks required of a carpenter because of the pressure placed upon his feet. A Miss Goss testified that the claimant could not walk on rough ground and that his feet would swell noticeably when he had been walking.
The JIC found in his compensation order:
"3. The claimant reached maximum medical improvement on May 17, 1972, with a twenty-five percent permanent partial disability of the right foot, and a ten percent permanent partial disability of the left foot, on an anatomical basis. However, the effect of the two scheduled injuries is to reduce the efficiency of the body as a whole. He cannot drive or stand for prolonged periods, and he cannot climb or walk on rough ground as he could prior to the injury because of the injuries to both feet. Therefore, the injury to the claimant must be considered as an injury to the body as a whole, with consideration given to the claimant's loss of wage-earning capacity." (Emphasis supplied.)
The JIC determined that the claimant had sustained a thirty percent partial disability of the body as a whole. The IRC reversed and remanded finding that the JIC should have found permanent partial disability of scheduled members and not disability of the body as a whole.
The sole question for our determination is whether independent, simultaneous injuries to two body members, which would be considered as scheduled injuries if they occurred separately, may be treated under Florida Statute § 440.15(3)(u), F.S.A., as an injury to the body as a whole?
The issue is one of first impression in Florida. The Legislature has provided guidance by way of Florida Statute § 440.15(5)(c), F.S.A., which states:
"(5) Subsequent Injury. 
"...
"(c) ... However, if an employee who has received compensation under this chapter for a previous permanent partial disability, impairment, or disease incurs a subsequent permanent partial disability from injury or occupational disease arising out of and in the course of his employment which merges with the pre-existing permanent partial disability, impairment, or disease to cause a permanent partial disability that is greater than that which would have resulted from the subsequent injury or occupational disease alone, the compensation received for the previous permanent partial disability, impairment, or disease shall be deducted from the compensation payable for the subsequent permanent partial disability. However, in no event shall the compensation for the subsequent permanent partial disability be less than that allowed for the degree of disability that would have resulted from the subsequent injury or occupational disease if the previous disability had not existed."
This Court has held that a subsequent injury may merge with a previous injury "... to cause a permanent disability that is materially and substantially *644 greater than that which resulted from the subsequent injury alone." Sharer v. Hotel Corp. of America, 144 So.2d 813, 818 (Fla. 1962). The merged injury would then justify a disability award based upon a rating of the body as a whole. Sharer v. Hotel Corp. of America, supra; Davis v. Okeelanta Sugar Refinery, Inc., 147 So.2d 513 (Fla. 1962). (Both Sharer and Davis cite to F.S. § 440.15(5)(d). That statute has been renumbered and appears at § 440.49.)
It is obvious that the only real difference between subsequent injuries and simultaneous injuries is the amount of time that transpires between the two injuries. A subsequent injury may occur months, days or even hours after the initial injury and the injured employee could be entitled to an award based upon an injury to his body as a whole. It would indeed be unjust to then hold that a workman who received the same injuries simultaneously could not show damage to his body as a whole.
Florida, as most states, administers its Workmen's Compensation Law according to the policy that the claimant is being compensated for the loss of earning capacity that the injury will cause and not the injury itself. (Tenbroeck v. North Broward Hospital Dist., 243 So.2d 592 [Fla. 1971]; Ball v. Mann, 75 So.2d 758 (Fla. 1954). "This Court has consistently construed the Workmen's Compensation Law liberally in order to accomplish the beneficent purposes and objectives implicit in legislation of this type." Wick Roofing Co. v. Curtis, 110 So.2d 385, 387 (Fla. 1959); Sharer v. Hotel Corp. of America, supra. The schedule in F.S. § 440.15, F.S.A., should not be applied with remorseless and inflexible precision when there is, as in this case, competent substantial evidence that would warrant a rating under F.S. § 440.15(3)(u), F.S.A., "other cases."
This policy is exemplified in Kashin v. Food Fair, 97 So.2d 609, 614 (Fla. 1957) wherein this Court held:
"When as a result of a scheduled injury a claimant suffers a loss of efficiency or pain in some other part of his body, not included in the specific schedule, as in the shoulder girdle area in the matter before us, then the disability or incapacity produced by the condition in such other part of the body cannot be said to be within the ambit of a scheduled injury under the Workmen's Compensation Act."
As the respondents point out in their brief, many of the cases cited by the claimant are technically distinguishable from the case sub judice. It is also true that many of those cases, such as Kashin v. Food Fair, supra, deal with injuries to the torso of the body in addition to injuries to scheduled members. However, the policy expressed by those cases is not easily distinguishable from this case. Secondly, we do not feel that the Legislature meant "torso" when it said "body as a whole" but instead meant to recognize that some injuries simply may not fit in the schedule set forth in F.S. § 440.15, F.S.A. Thus when an injury to a scheduled member results in greater disability than ordinarily accompanies that injury because it has coupled with another member injury, the JIC should recognize that fact and hold accordingly.
We agree with the respondents when they cite Little River Bank and Trust Co. v. Neal, 154 So.2d 809 (Fla. 1963) for the proposition that the Legislature considered all of the variables when it proscribed the schedule in F.S. § 440.15, F.S.A., and that administrative agencies and courts are bound to follow the statute. Where the injury is restricted to what F.S. § 440.15, F.S.A., describes in terms of scheduled injuries, the JIC must follow the statute. But where, as here, the injury is not specifically covered, and where the JIC has competent substantial evidence to find that the injury has affected the body as a whole, the JIC should so find.
*645 In connection with this point it should be noted that F.S. § 440.15(3)(d), F.S.A., refers to "foot lost", the singular and not the plural. The Legislature recognized that it could not possibly foresee every possible injury or combination of injuries so it included in the schedule subsection (u) to cover other cases. The injury described sub judice falls into the "other cases" category.
The situation where there are simultaneous injuries to two scheduled members resulting in two independent injuries is discussed in 99 C.J.S. Workmen's Compensation § 308 at page 1114:
"A similar problem exists where an employee sustains an injury to both feet or to both legs; and while it has been held that the award is to be computed by simply adding the amounts provided for each injury considered individually, other courts have rejected this view as not taking into account the cumulative effect of the injuries, and have held that the computation should be made under general or `other cases' provisions when the total effect of the injuries may be considered."
See Smith v. Kedney Warehouse Co., 197 Minn. 558, 267 N.W. 478 (1936); Dauster v. Star Mfg. Co., 145 S.W.2d 499 (Mo. Ct. App. 1940); Stoldt Builders, Inc. v. Thomas, 393 S.W.2d 875 (Okl. 1964); and Carenza v. Vulcan-Cincinnati, Inc., 368 S.W.2d 507 (Mo. Ct. App. 1963).
Therefore, based upon the foregoing authorities, the decision of the Industrial Relations Commission is hereby reversed and remanded with directions to reinstate the order of the Judge of Industrial Claims consistent with this opinion.
It is so ordered.
ADKINS, C.J., and ROBERTS, ERVIN and DEKLE, JJ., concur.