O’CONNELL, Justice.
In this workmen’s compensation proceeding we are called upon to determine whether the deputy was correct in awarding compensation benefits on the basis of disability of the whole hand where the functional disability is limited to the thumb.
Claimant, Bettye T. Neal, a teller in the petitioner bank, pricked her left thumb on a metal staple in the course of her employment. The thumb became infected requiring considerable medical treatment.
The evidence shows the residual effect of the injury, infection and treatment to be a *810 stiffening of and loss of motion in the interphalangeal joint of the left thumb which restricts its use in conjunction with the other digits of the hand. Claimant is no longer able to make a strong pincers or grasp with the thumb and the remainder of her hand. However, the use of the fingers and remainder of the hand is unimpaired. She demonstrated to the deputy that she could make a tight fist and he remarked that he observed “I can see the whiteness,” indicating the force of the grip.
Claimant testified that in damp weather she had some pain in her hand and wrist which she also experienced if she put undue stress on her thumb and hand.
She is still employed in her pre-injury capacity as teller and performs her work to the full satisfaction of her employer.
Two physicians testified, one for the claimant, one for the Bank.
The Bank’s physician testified that claimant had a residual permanent partial disability of 25% of the left thumb. Although he recognized that injury to any digit, particularly the thumb, would affect the use of the hand he was of the opinion that the claimant’s functional disability was limited to the thumb.
Claimant’s physician was of the opinion that she had lost half the function of the thumb. By using the American Medical Association tables he transposed this loss of thumb function to a 22 percent disability of the hand and added another 3 percent for other involvements, which he did not explain, making a total of 25 percent disability of the whole hand. This physician’s testimony reveals that he felt the hand to be affected because, as he stated it, claimant had lost part of “her pinch of grasp which involves the hand.”
The deputy, remarking that he relied on the rating by claimant’s physician, awarded compensation for 25 percent disability of the hand. In support of his award he stated that he had, among other actions, observed the inability of the claimant “to make a tight pinch or grasp using the thumb of her hand in opposition to the other fingers thereof.” The deputy in the alternative said that even if claimant’s disability was only to the thumb, and not the hand, he found such thumb disability to be between 70% and 75% rather than 25% as argued by the Bank.
Under the facts of this case the deputy erred in awarding compensation for disability of the hand. His award should have been confined to the loss of use of the thumb.
Other than the pain which claimant testified she felt in damp weather and when she exerted undue strain or pressure, there is nothing to show any disability or incapacity to the fingers or remainder of the hand. The pain was not shown to be disabling and therefore is not compensable. Nor was the injured digit shown to “stick out like a sore thumb” interfering, because of tenderness or immobility, with use of the remainder of the hand.
The deputy obviously followed the theory advanced by claimant’s medical witness that any loss of use of the thumb impairs the function of the whole hand and apparently reasoned that it was therefore proper to transform the thumb function loss into a hand function loss.
We have established the rale that unless it be shown that a scheduled injury produces disability or incapacity in some other member or portion of the body, administrative agencies and the courts are bound to follow the legislative prescription for scheduled injuries. We explained this in Hernandez v. De Carlo, Fla.1959, 116 So.2d 429, 431, by pointing out that, in theory at least, the legislature in establishing the compensation to be paid for scheduled injuries had considered all the variables and factors which ought to be considered in determining the economic effect of the loss of a scheduled member.
In the Hernandez case we were dealing with a scheduled injury producing a disability of the body as a whole. Nevertheless, *811 the analogy is pertinent and direct between that situation and this one where the effort is to relate a thumb function loss to a loss of function of the hand as a whole.
Every loss of function in any member or portion of the body undoubtedly affects the function of the body as a whole. Even so as a practical means of determining the amount of the economic loss of the specified members and organs the legislature prescribed the schedule set forth in Sec. 440.15(3) F.S.A. In establishing this schedule the legislature is presumed to have considered the interrelation of each member with' the body as a whole and the effect of a loss of any member on the rest of the body and its various members.
The legislature must therefore he presumed to have known, as every human knows, that almost every function of the hand involves use of the thumb in opposition to the fingers and/or palm, and that loss of function of the thumb invariably impairs the function and efficiency of the whole hand.
Legislative contemplation must also be presumed to have encompassed the fact that by itself the thumb, as explained by claimant’s medical witness, “ * * * can only be used for pushing or hooking something * * By itself the thumb seems no more important than any other digit.
It must also be presumed that the legislature took these factors into account in establishing the amount of compensation to be paid for loss of a thumb, the fingers and the whole hand.
The schedule, Sec. 440.15(3) F.S.A., proves that the legislature did acknowledge the functional and therefore economic importance of the thumb in relation to the other digits and the whole hand.
Loss of the thumb deserves 60 weeks compensation, which is slightly more than one third of the compensation allowed for loss of the whole hand. Loss of use of the other digits merit only 35, 20, 20 and 15 weeks, respectively.
In the face of the obvious functional importance of the thumb to the whole hand, the legislature, nevertheless, elected to treat the thumb separately from the hand and directed that in such cases compensation be measured and awarded in terms of loss of function of that digit alone and not measured and awarded in terms of the effect of the loss of use of the thumb on the whole hand.
It was therefore error for the deputy to do what the legislature has declined to do, i. e. convert a thumb function loss into a hand loss and award compensation on such basis.
If this were not adopted as the rule every loss of thumb function could automatically be converted into a loss of function of the hand. If the legislature had intended this result it would not have provided for loss of a thumb in the schedule.
Inasmuch as the deputy in the alternative found that disability of claimant’s thumb was between 70% and 75% we have considered the sufficiency of the evidence to support that finding.
Claimant’s evidence was directed primarily toward establishing the extent of disability of the hand rather than that of the thumb. The evidence most favorable to her as to the impairment of thumb function was that given by her medical witness. He testified that she had suffered loss of one half of use of her thumb. We find no evidence which accords with logic and reason to support the finding of 70-75% loss.
For the reasons above expressed the writ of certiorari is issued, the order of the Full Commission is quashed, and the cause is remanded for further proceedings consistent herewith.
It is so ordered.
ROBERTS, C. J., and TERRELL, THOMAS and DREW, JJ., concur.