DEPARTMENT OF CORRECTION, MARYLAND
PENITENTIARY ᴇᴛ ᴀʟ. *v.* JOHNSON

[No. 168, September Term, 1959.]

*Decided March 24, 1960.*

140

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*J. Howard Holzer, Special Assistant Attorney General,* and *Paul J. Yeager, Special Attorney,* with whom were *C. Ferdinand Sybert, Attorney General, U. Theodore Hayes, Special Assistant Attorney General,* and *Paul J. Reed, Jr., Special Attorney,* on the brief, for the appellants.

*Fred E. Weisgal,* with whom were *Stanley Sollins* and *Weisgal & Sollins* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The claimant-appellee, Johnson, sustained an accidental injury while working in the woodshop of a penal institution, as a result of which both of his thumbs were cut off at the terminal phalanx. Johnson, whose formal education did not extend beyond the sixth grade, was a cabinetmaker before entering the institution. The Workmen's Compensation Commission (the Commission) found that Johnson had sustained a permanent partial disability to his thumbs resulting in a 25% industrial loss of use of the body and made an award to him of compensation at the rate of $14.02 a week, the agreed amount of his weekly wages (including maintenance) at the institution, not to exceed the aggregate amount of $3,125. The employer, the Department of Correction, and its insurer, the State Accident Fund, appealed.

The award was made under the so-called "Other Cases" provisions (Sec. 36 (4) (a) of the Workmen's Compensation Act (Art. 101 of the Code (1957), referred to as the "Act"). The appellants contend that the award should have been made for a "scheduled" injury under Sec. 36 (3) of the Act. The principal question for determination is whether the loss, or loss of use, of both thumbs is to be compensated for under

subsection (3) by multiplying by two the scheduled allowance for the loss of one thumb, or whether the Commission, in its discretion, might allow compensation in a larger amount under the "Other Cases" provisions of subsection (4). The appellants claim not only that the award should have been under subsection (3), but that the trial court erred in not passing upon the appellants' issues as to the percentage of injury to each thumb sustained by the claimant as a result of the accident because the amputation was of only one phalanx of each thumb. The appellee insists in his brief that he has no thumbs. The Commission does not appear to have passed upon this question and the trial court rejected issues raising it. It was thereafter stipulated in the trial court that the claimant testified that "the traumatic amputation of the terminal phalanx of both thumbs affected his working ability and productivity." It was also stipulated below that if the Commission was limited to making an award under subsection (3) of Section 36, its decision should be reversed, but that, if it could, in its discretion make an award under subsection (4) its decision should be affirmed. The main argument in this Court was whether the schedule or the "Other Cases" clause was applicable.

Subsections (3) and (4) of Section 36 of the Act provide in part as follows:

> "(3) *Permanent partial disability—Specific injuries.*—(a) In case of disability partial in character but permanent in quality, the compensation shall be sixty-six and two-thirds per centum of the average weekly wages, [not more nor less than certain specified amounts], but in no case to exceed * * * ($12,500 dollars) in the aggregate and shall be paid to the employee for the period named in the schedule as follows:
>
> "Thumb—For the loss of a thumb, fifty weeks.
>
> * * *
>
> (b) Compensation for the loss, or loss of use, of more than one phalanx of a digit of a hand or foot shall be the same as the loss, or loss of use, of the entire digit. Compensation for the loss, or loss of

use, of the first phalanx shall be one-half of compensation for the loss of the entire digit. * * *

"(4) *Same—Other cases.*—(a) In all other cases of disability, other than those specifically enumerated disabilities set forth in subsection (3) of this section, which disability is partial in character, but permanent in quality, the Commission shall determine the portion or percentage by which the industrial use of the employee's body was impaired as a result of the injury * * * [taking] into consideration, among other things, the nature of the physical injury, the occupation, experience, training and age of the injured employee at the time of the injury, and shall award compensation in such proportion as the determined loss bears to the sum of $12,500 * * *."

It may be added that the compensation for loss of a thumb is expressed as exactly that—"[f]or the loss of *a* thumb." (Emphasis supplied.) So, too, is the compensation for permanent partial disability expressed (in subsection (3)(a) immediately following that for the loss of a thumb) for the loss of *a* first finger, *a* second finger, *a* third finger, or *a* fourth (or little) finger. (Emphasis added.) Likewise (and again with emphasis added) compensation is so expressed in subsection (3)(b) for the loss of *a* great toe, (and for the loss of *one* of the toes other than the great toe) and for the loss of *a* hand, *an* arm, *a* foot, *a* leg, or *an* eye. It may also be noted that for the total loss of hearing in both ears, the scheduled allowance is more than twice that provided for the total loss of hearing in one ear. It seems that not a great deal of importance can be attached to this either way. On the one hand, it may suggest that multiplication by two would be the normal way to compute the award; on the other hand, and this seems to us a somewhat stronger implication, it seems a measure of the extent of total deafness as a partial disability, and this measure is greater than twice the loss of hearing in one ear. This view is fortified by the fact that under Sec. 36 (1) (a), the loss, or loss of use, of both hands, both arms, both feet,

both legs, or of both eyes, or of any two thereof, "shall, in the absence of conclusive proof to the contrary, constitute permanent total disability." Scheduled benefits for permanent, partial disability for the loss of one hand, one foot, etc. vary, yet the loss of both hands, both feet, etc., or any two of them, will ordinarily amount to permanent, total disability. Such a result is not merely a product of the multiplication table.

No case in this Court squarely on the point at issue has been cited, nor have our researches disclosed any. There have been differences of opinion in other States under statutes similar to ours. 99 C. J. S., *Workmen's Compensation,* § 308 states: "Where an employee suffers multiple injuries, some or all of which are scheduled, the practice in some jurisdictions is to award the total of the sums allowed for each injury considered separately, but others seek to give recognition to the cumulative effect of such injuries by compensating on the basis of general disability or on the basis of the greater disability." It is stated that the former is the "general rule", but our study leads us to doubt the correctness of this statement.

Certainly, there are cases which do support that view. Among them are *Wammack v. Root Manufacturing Co.,* 184 Kan. 367, 336 P. 2d 441, in which the reasons for the result there reached are well stated by Parker, C. J. That case is almost exactly like the present case, even to the point of the injury being the loss of both thumbs. The court thought it was bound by an earlier case, *Rogers v. Board of Public Utilities of Kansas City,* 158 Kan. 693, 149 P. 2d 632. The court made no attempt to distinguish between the different types of injuries or the disability resulting therefrom.

Another such case, in its final result, is *Smith v. Kedney Warehouse Co.,* 197 Minn. 558, 267 N. W. 478 (first opinion), 269 N. W. 633 (final opinion). In its first opinion, the court affirmed an award under the "other cases" clause for permanent partial disability to both legs. It later reversed this opinion on the basis that the Act specifically provided that the singular should include the plural (Mason's Minn. St. 1927, 4326 subdivision (k)). This rule is no longer contained in the Minnesota Workmen's Compensation Act (13 Minn. Stat. Ann., Ch. 176) but is contained in the Canons of Construction

(42 Minn. Stat. Ann., § 645.08 (2)). A similar provision is contained in the Maryland Code, Code (1957) Art. 1, sec. 8, but with the proviso that such is not to apply where the construction would be unreasonable. No singular—plural rule is in the original Workmen's Compensation Act, Acts of 1914, Ch. 800, or in the present Act, Code (1957), Art. 101. Similar provisions to those in the Maryland Code are contained in the Codes of Missouri, Arizona, Louisiana, and New Jersey, in which States multiple injuries have been held compensable according to the "other cases" provision. Cases from these States are referred to below.

Awards for multiple injuries have been sustained under "other cases" provisions in several States. Thus, in *Dauster v. Star Mfg. Co.,* 145 S. W. 2d 499 (Mo. App.) the claimant had partially lost the use of each leg. The commission had awarded compensation under the "other cases" section for 75% of loss of ability to work. The employer argued that the employee should recover under the schedule for the loss of use of each leg. The court answered, at p. 502, "This finding [of the Commission] could not and evidently was not based on the specified injuries set forth in Section 3315 (a). Those specifications cover no such injury as this man suffered,—injury to both legs. Therefore, unless there is authority in the act outside of the specified injuries for the Commission to make a finding of the per cent. a normal man's earning power is lessened where both legs are injured, as was this man's, then there is a gap, a hiatus in the law, and no provision for such multiple injuries. This cannot be. The Legislature intended to, and in our opinion did, cover any and every accidental injury." After noting that the section of the Act referring to concurrent disabilities dealt only with subsequent injuries, not concurrent, it quoted the "other cases" section. "We are unable to construe this clause, as appellant does, that the compensation period for two injuries received in the same accident is necessarily to be fixed in proportion to the compensation period specified for one of such injuries standing alone as fixed in the schedule. Such construction would not be compatible with the language used or with the purpose of the act itself. The clause is intended as a cover-all for other injuries than those specified, and is there-

fore necessarily stated in the plural, referring to all other cases of injury than those specified * * *." This rule was again applied as to partial loss of use of both legs in *Chapman v. Raftery*, 174 S. W. 2d 352 (Mo. App.).

In *Orlando v. F. Ferguson & Son*, 90 N. J. L. 553, 102 A. 155, the New Jersey court had before it a claimant who had 50% loss of both hands and 10% loss of one eye. The lower court had awarded compensation for loss of hands based on partial permanent disability and 10% of eye as 10% loss of one eye. The court held this was incorrect. At 102 A. 2d 156 it said: "It must be obvious that if such a case of partial but permanent disability of three members is to be apportioned on the basis of total and permanent disability, it must be in the proportion that all of the injuries bear to total and permanent disability, and not partly on the ratio that two of them bear to total and permanent disability and partly on the compensation provided for injury to the third member only. * * * We do not, however, approve of the method of award advocated by the appellant, namely, that compensation should be calculated by taking each injured function separately and adding up the items of partials. * * * [The problem] is not to be solved by adding up the fractional parts, but upon the basis of the percentage of total and permanent disability reasonably found to be produced by the several injuries considered collectively and with due regard to their cumulative effect."

The same rule was applied to the permanent loss of one eye, the partial loss of the other eye, and a neurosis resulting from the two (which was not a scheduled injury) by adding the effect of each on total disability and giving an award based on the total in *Cooper v. Cities Service Oil Co.*, 137 N. J. L. 181, 59 A. 2d 268.

The same principle was applied under the Louisiana statute to the loss of a left toe and the right foot in *Porter v Alfred S. Amer Co.*, 146 La. 618, 83 So. 852. Also, in *Trustees of Indianna University v. Rush*, 99 Ind. App. 203, 192 N. E. 111, the "other cases" section was applied to an award of compensation where there were multiple injuries to the legs and feet of the employee. The Indiana Appellate Court followed the rule set forth in *Lauritzen v. U. S. Reduction Co.*, 78 Ind.

App. 293, 135 N. E. 390, in which the court said that the scheduled injuries referred to singular injuries and not to multiple injuries. Similarly in *Williams v. Industrial Comm.,* 73 Ariz. 57, 237 P. 2d 471, recovery for disability of the whole body was permitted for injury to a foot and an arm.

In *Texas Employers' Ins. Ass'n v. Yother,* 306 S. W. 2d 730 (Tex. Civ. App.) the court said that the claimant should be allowed a recovery under "other cases" for multiple injuries consisting of scheduled and non-scheduled injuries. The problem in such a case is, however, somewhat different from that where all of the injuries are scheduled.

The text writers have considered the problem to some extent. See 11 Schneider, *Workmen's Compensation* (Perm. Ed.), §§ 2311, 2318, 2322(a), and 2 Larson, *Workmen's Compensation,* § 58.20. Schneider, in § 2311, states in part: "The question of when a specific injury becomes an 'other injuries' type often presents a shadowy line of demarcation and calls for the wise discretion of the Board, Commission or Referee in the light of substantial facts in evidence." And in § 2318, he says: "Usually multiple injuries will be considered to affect the body of the employee as a whole, or a member as a unit, and so such multiple injuries are generally rated under the catchall, or other cases, provisions. The exceptions are so numerous that it is difficult to say which is the general rule. Little more can be done than give the examples of the decided cases in the various jurisdictions."

Larson, *op. et plac. cit.,* says: "The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive." As the learned author points out, the extended effects of such injuries may result in greater interference with the employee's ability to work than might be expected from a simple and uncomplicated injury.

It requires neither argument nor elaboration to show that to a manual worker the loss. or loss of use, of both thumbs is a substantial injury and that it is much more serious than would be the loss of one thumb.

Though the precise question now before us has not pre-

viously been decided by this Court, some of its prior decisions seem to point the way to its determination.

In *Congoleum Nairn, Inc. v. Brown,* 158 Md. 285, 148 A. 220, the claimant had suffered in what may be called the current accident the loss of the whole of the third and fourth fingers and two-thirds of the second finger of his right hand. In a prior accident four years earlier, while working for the same employer, the claimant had lost the index finger and second finger from his left hand and had been awarded compensation for permanent partial disability resulting from that loss. For his current accident the then Commission awarded him compensation for permanent partial disability for the loss of fingers due to that accident. On appeal a Circuit Court allowed him compensation for permanent total disability as a consequence of the combined effect of his current and earlier accidents above described. The judgment was reversed because of rulings allowing such an award if the claimant, after the current accident, was unable to do such work as he was accustomed and qualified to do at the time of the accident. These rulings were held too restrictive, since incapacity under the Act meant incapacity to do work of any kind, not merely that to which the claimant was accustomed and which he was qualified to perform. However, since the case had to be sent back for a new trial, this Court ruled on other points which, we think, are significant in the instant case. At page 289 of 158 Md., Chief Judge Bond, speaking for the Court said: "And as to the left hand, with its thumb and last two fingers remaining, the claimant testified that its usefulness in this condition was in conjunction with the whole right hand, and, therefore, even though the commission, at the time of the earlier accident, adjudged that hand to have been only partially disabled, we cannot say that with the right hand now maimed as it is the practical usefulness of the left must continue in some degree. Both of the hands are so maimed, and their power to grip seems to have been so far reduced, that in the opinion of this court it was proper to submit to the decision of the jury the question whether the use of both had been totally lost."

After this decision the Legislature amended the statute to

make special provisions in cases of prior and subsequent injuries. Acts of 1931, Ch. 363. We are not here concerned with these provisions, since the claimant's dual injuries occurred in the same accident.

In *Lisowsky v. White,* 177 Md. 377, 9 A. 2d 599, the claimant had suffered injuries which necessitated the amputation of the first, second and third fingers of the left hand at the middle of the second joint, resulting in two-thirds loss of use of the hand. The Act as then in force contained the same kind of schedule as the present Act. The question was whether the claimant was limited to a recovery for loss of these three fingers or could recover for the loss of two-thirds of the use of the hand. The statute made specified and different allowances of compensation for the loss of each of the fingers. It also provided after the "Other Cases" paragraph that: "In all cases where there has been an amputation of a part of any member of the body herein specified, or the loss of the use of any part thereof, for which compensation is not specifically provided herein, the Commission shall allow compensation for such proportion of the total number of weeks allowed for the amputation or the loss of the use of the entire member, as the affected or amputated portion thereof bears to the whole." This provision is now embodied in Sec. 36 (3) (e). This section was relied upon by the Court to support an award to the claimant of compensation for the loss of use of two-thirds of the hand, rather than just for the loss of the fingers. In reaching its conclusion the Court cited a Vermont case (*Jacobs v. Holden Leonard Co.,* 110 Vt. 245, 4 A. 2d 343), and went on to say (177 Md. at 381-2): "The higher element or measure of damage, or injury, in workmen's compensation cases, should be accorded to the injured person. Otherwise he would not receive that adequate compensation for his injuries that is contemplated by law. In other words, if the loss, or injury, to the entire hand, is greater than that limited to the aggregate loss of the fingers, then it would seem but just that the higher measure of damage should be applied, because after all it is adequate compensation that the law seeks to accord. * * *. If there is a conflict in the Workmen's Compensation Law with respect to these questions of con-

struction, it seems to us that this should be resolved in favor of the claimant, otherwise that part of the statute which vouch-safes to him a certain sum of money resulting from a definite injury sustained by him, as shown by established facts, would be nullified, and a construction giving to him a lesser sum would stand in its place. We can scarcely think the Legislature intended this to be. Therefore this permanent partial loss with respect to the usefulness of his whole hand should be given precedence over the aggregate loss to his three fingers, and for the further reason that the loss of three fingers occasions an injury greater than that measured by adding the loss of each finger. This combined loss does something more than a loss of fingers, for it occasions a loss to the usefulness of the entire hand." This decision was followed in *Paul v. Glidden Co.*, 184 Md. 114, 39 A. 2d 544.

More recently, in *Southern States Marketing Co-op. v. Lippa*, 193 Md. 385, 67 A. 2d 244, it was held that where the same accident resulted in injury to a thumb through the severance of a tendon and also caused a disfigurement, compensation could be awarded for each, distinguishing *Bethlehem-Sparrows Point Shipyard, Inc. v. Damasiewicz*, 187 Md. 474, 50 A. 2d 799.

We do not find the singular—plural general canon of construction contained in Article 1, sec. 8 of the Code (1957) applicable in this case. It would be obviously unreasonable to read it as meaning that the loss of one thumb should include the loss of two at the rate of compensation allowed for one, and no such forced contention is made. Literally, however, apart from the limitation against an unreasonable construction, such a contention could be made, and it is difficult to find any other construction of the actual words used through which it could be operative in this case. Merely to state such a construction is, we think, to refute it.

We conclude that the amputation of *both* thumbs is not within the schedule of specific disabilities contained in subsection (3) of Section 36 of the Act and that it falls within subsection (4) of that Section, the "Other Cases" provision of our statute. We therefore think the Commission was war-

ranted in making its award and that the judgment appealed from was correct.

*Judgment affirmed, with costs.*

HENDERSON, J., filed the following dissenting opinion.

The appellee sustained injuries resulting in the loss of the terminal phalanx of both thumbs. The Commission held that these injuries were not within the schedule of specific injuries set forth in section 36, subsection (3) of the Compensation Act, but fell within subsection (4), which sets up a different measure of recovery for "all other cases of disability, other than those specifically enumerated disabilities set forth in subsection (3)". On this basis, the Commission's award was more than twice as great as the sum of the scheduled amounts for the two specific injuries. This Court approved the Commission's construction of the statute. I think such a construction is strained and untenable.

To my mind, the references in subsection (3) to *a* thumb, *a* finger, or *a* toe were intended to establish a unit price or rate and to limit recovery in the case of each member, to a fixed number of weeks, multiplied by a fixed percentage of the average weekly wage. Specific provision is made for the loss of a first phalanx, for more than one phalanx of a digit of a hand, and for multiple injuries to parts of a hand. Funk and Wagnall's Dictionary (1949 ed.) notes the use of the indefinite article "a" in such phrases as "one dollar *a* bushel, with the distributive sense of each, and equivalent to *per*". The Oxford English Dictionary notes its use as "denoting the proportion of one thing to another" as in "a penny *a* day". It is unnecessary to invoke the rule of construction stated in Code (1957), Art. 1, sec. 8, that the singular includes the plural, and *vice versa,* although this section is clearly applicable to Art. 101, and this Court has so held. *Wheeler v. Rhoten,* 144 Md. 10, 12. I think the distributive sense is implicit in the language employed.

That this was the legislative meaning is suggested by the fact that subsection (3) (b) contains the clause "For the total loss of hearing of one ear, seventy-five weeks; for the total loss of hearing of both ears, one hundred and seventy-five

weeks." Evidently the legislature thought that the loss of hearing in both ears was worth more than the sum of the loss of hearing in each ear, and increased the award by twenty-five weeks. If the dual or multiple loss would have automatically brought the case under "other cases", and permitted an award based on a percentage of total disability, there would have been no point in adopting the language quoted.

If it be thought harsh to impose a price tag upon human injuries, we must remember that the primary purpose of the Compensation Act, first adopted in 1914, was to substitute for the employer's common-law liability for negligence, subject to his common-law defenses, an absolute but limited liability regardless of fault. *Cox v. Sandler's, Inc.*, 209 Md. 193, 198. The scheduling of injuries, so far as practicable, was an essential part of the insurance scheme, designed to substitute certainty for uncertainty. It is not without significance that most of the cases arising under "other cases" have been back injuries, or injuries to the internal organs, where the schedule could not possibly apply. "Other cases" would seem to import cases not mentioned at all in the schedule of specific injuries.

I find no support for the Court's conclusion in the prior decisions of this Court, but quite the contrary. In *Congoleum Nairn v. Brown*, 158 Md. 285, the claimant lost several fingers of the right hand in an accident, and had lost several fingers of the left hand in a prior accident. It was not contended that "other cases" was applicable. The contentions were that the loss in the current accident should be calculated in terms of the loss of use of the right hand, rather than as the sum of the loss of the fingers, and that the loss of both hands amounted to total, rather than partial, disability, under the precise terms of the statute. In *Lisowsky v. White*, 177 Md. 377, the claimant had lost three fingers of one hand. The holding was that he could recover for the percentage of loss of use of the hand, rather than for the sum of the three fingers allowance. There was no suggestion that "other cases" would apply, and the Court held applicable another provision of the specified injury section. This holding was cited with approval in *Paul v. Glidden Co.*, 184 Md. 114, 116. *Southern States Marketing*

*Co-op. v. Lippa,* 193 Md. 385, allowed recovery for the loss of use of a thumb, on the scheduled basis, and, in addition, separate compensation for disfigurement of the forearm, independent of the disability and not a part of it. The fact that all of these cases involved multiple injuries, but in no case was a claim based on "other cases", seems to me to be quite significant. Indeed, it might be argued that these decisions would justify the application of *stare decisis,* as in *Townsend v. Bethlehem-Fairfield Shipyard,* 186 Md. 406, 412 *et seq.*

When we turn to the cases in other states, *Wammack v. Root Manufacturing Co.,* 336 P. 2d 441 (Kan.) (1959), is directly in point, and supports my view, as does the *Minnesota* case cited in the majority opinion. See also *Herron v. Williams & Voris Lumber Co.,* 8 So. 2d 593 (Ala.) and *Griffith v. Goforth,* 195 S. W. 2d 33 (Tenn.). In the case last cited, the sum of the allowances for multiple injuries exceeded the limit for total incapacity. The *Dauster* case in Missouri involved the loss of both legs, a situation that is covered specifically in our Act. A reading of the New Jersey cases leaves me in some doubt as to the rule there adopted. Apparently the court approved a separate calculation for injuries to a leg and an arm in *Flanagan v. Charles E. Green & Son,* 2 A. 2d 180 (N. J. Eq.). Cf. *Colarusso v. Bahto,* 27 A. 2d 210 (N. J. L.). The *Orlando* case seems to have been distinguished in the *Cooper* case, where it was said that "separate and distinct classes of partial incapacity, though resulting from the same accident, are individually compensable." Moreover, the New Jersey statute uses the phrase "lesser or other cases", in its "other cases" section, and some stress was laid upon the word "lesser", in connection with provisions covering the loss of one eye and the partial loss of use of the other.

The difficulty of relying too much upon cases in other states is illustrated by the holding in the Arizona case of *Williams v. Industrial Commission of Arizona,* 237 P. 2d 471 (Ariz.). There the claimant suffered a 45% loss of use of a foot, and 50% loss of use of an arm, and also a 20% loss of earning power. A majority of the court held he was not entitled to anything for the scheduled injuries, but only for the loss of earning power under the "odd lot" section. The dissenting

justice thought the claimant was entitled to both. But it was not suggested in either opinion that compensation could be awarded based upon the percentage of disability of the whole body. Similarly, in *Porter v. Alfred S. Amer Co.*, 83 So. 852 (La.), the court increased an award for the scheduled loss of a foot, by adding the maximum allowance under "other cases", because of the loss of a great toe on the other foot. But the holding was based upon language allowing reasonable compensation in proportion to the scheduled awards "where the usefulness of a member * * * is seriously permanently impaired." Both of these statutes are quite different from ours.

If the construction of our statute is not settled by the previous Maryland decisions, I should prefer to follow those courts that decline to adopt a construction which does violence to the plain meaning of words in order to produce a "liberal" result. As was said in *Townsend v. Bethlehem-Fairfield Shipyard, supra* (p. 418), quoting *Howard Contr. Co. v. Yeager*, 184 Md. 503, 511: "Judicial construction should only be resorted to when an ambiguity exists. Here, we find none. Whether the act should be amended, and some different provision made for a case such as the one before us, is not for our determination."