656 A.2d 757

MAYOR AND CITY COUNCIL OF BALTIMORE

v.

Eugene CASSIDY.

No. 59, Sept. Term, 1994.

Court of Appeals of Maryland.

April 10, 1995.

Herbert Burgunder, Jr., Sr. Sol., and David Allen, Asst. City Sol. (Stanley C. Rogosin, Principal Counsel, all on brief), Baltimore, for petitioner.

Karl H. Goodman (Karl H. Goodman, P.A., on brief), Baltimore, for respondent.

John C. Seipp, Benjamin L. Willey, Adkins, Potts & Smethurst, on brief, Salisbury, for amicus curiae, Delmarva Power and Light Co.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, KARWACKI, BELL and RAKER, JJ.

BELL, Judge.

We granted certiorari to determine whether the loss of two eyes in a single accident, which does not result in permanent total disability, is compensable pursuant to Maryland Code (1991) § 9–627(d)(1)(vi), of the Labor and Employment Article, at double the rate for the loss of one eye, or under § 9–627(k), "Other Cases." The Workers' Compensation Commission ("the Commission") determined that such a loss, together with other injuries sustained in the same accident, constituted an 85% industrial loss of use of the body, and, thus, was compensable under the latter provision. Neither the Circuit Court for Baltimore City nor the Court of Special Appeals agreed, both holding that the former provision was as applicable to the

provision of the loss of two eyes as it was to one. We shall reverse.

## I.

On October 22, 1987,[1] the respondent, Eugene Cassidy, a Baltimore City Police officer, was shot in the line of duty and seriously injured. He sustained a complete loss of the senses of sight, taste, and smell. In addition, a bullet remains lodged in his head. The respondent is currently employed by the Police Department as an instructor at the Police Academy at a salary exceeding the amount he earned at the time of his injury.

Upon the respondent's application for workers' compensation, the Commission held a hearing to determine the nature and extent of the respondent's permanent partial disability. At that hearing, neither the fact nor the nature of the respondent's injuries was disputed. Indeed, the petitioner, the Mayor and City Council of Baltimore, stipulated that the respondent was 100% blind and the respondent informed the Commission of his other injuries. Proceeding under "Other Cases," the Commission determined that the respondent's permanent partial disability amounted to an 85% industrial loss of use of the body. It awarded the respondent compensation at the rate of $244.00 per week for 567 weeks.[2]

---

1. When the respondent sought compensation for his injuries, the current version of the Workers' Compensation Act, codified at Maryland Code (1991), Title 9 of the Labor and Employment Article, was in effect. When the injuries were incurred, however, the Act was codified at Maryland Code (1957, 1991 Repl. Vol.) Art. 101, § 36. The sections of the Act relevant to the resolution of the case *sub judice* were not substantially changed by the recodification.

   Unless otherwise indicated, all references to the Act will be to the current version.

2. Under "Other Cases," the award for permanent partial disability is determined by the proportion that the percentage by which the loss of industrial use of the body is impaired bears to 500 weeks, increased, pursuant to § 9–630, "Serious disability," by one-third. Thus, 85% × 500 weeks equals 425 weeks, plus 142 weeks (⅓ × 425 weeks), equals

The respondent sought judicial review of the award in the Circuit Court for Baltimore City, challenging, in particular, the Commission's treatment of his loss of vision claim. He filed in that court a "Motion for Partial Summary Judgment and Remand to the Commission" arguing, in effect, that the loss of two eyes is a scheduled loss, as a matter of law, and, thus, should have been calculated pursuant to § 9–627(d)(1)(vi). He sought an award of 667 weeks for his loss of vision.[3] Although conceding that his other losses—taste, smell, and head injury—were properly considered under "Other Cases," but noting that the Commission's order was silent as to them, the respondent sought remand of the case to the Commission for a determination of the extent of permanent partial disability attributable to the other losses.

The circuit court granted the respondent's motion in part.[4] It awarded permanent partial disability "amounting to 100% loss of vision in both eyes," calculated pursuant to § 9–627(d)(1)(vi)[5] and remanded the case to the Commission to determine "the amount of permanent partial disability the claimant sustained, if any, to his head and from the loss of

---

567 weeks. Calculated at the rate of $244.00 per week, the total award equals $138,348.00.

**3.** Since the scheduled compensation for the loss of one eye is 250 weeks, *see* § 9–627(d)(1)(vi), the respondent reasons, the loss of two eyes is compensated at 500 weeks. When it is adjusted for serious disability ($\frac{1}{3}$ × 500 weeks = 167 weeks), the total number of weeks awarded is 667 weeks. Calculated at $244.00 per week, the monetary value of the award for the vision loss alone is $162,748.00.

**4.** The motion also sought additional attorney's fees. That motion subsequently was denied by the trial court and the respondent did not appeal that determination. Consequently, that issue is not presently before us.

**5.** A determination, made pursuant to § 9–627(d)(1)(vi) that injuries render the claimant 100% permanently partially disabled, would appear to be the equivalent of finding that the claimant is permanently totally disabled.

taste and sense of smell."[6]

The petitioner appealed to the Court of Special Appeals. After that court affirmed the judgment of the circuit court, *City of Baltimore v. Cassidy,* 99 Md.App. 465, 637 A.2d 897 (1994), we granted the City's petition for certiorari to consider the important issue this case presents.

## II.

▇▇▇ Whether the loss of two eyes, as contrasted to the loss of one eye, is a scheduled loss is a matter of statutory construction, the object of which is to discern and effectuate the intention of the Legislature. *Gargliano v. State,* 334 Md. 428, 435, 639 A.2d 675, 678 (1994); *Motor Vehicle Admin. v. Seidel Chevrolet, Inc.,* 326 Md. 237, 248, 604 A.2d 473, 479 (1992); *Mustafa v. State,* 323 Md. 65, 73, 591 A.2d 481, 485 (1991). While the search for legislative intent begins, and ordinarily ends, with the words of the statute under review, *Harris v. State,* 331 Md. 137, 145, 626 A.2d 946, 950 (1993)— where the ordinary and common meaning of the words, *see Dickerson v. State,* 324 Md. 163, 171, 596 A.2d 648, 652 (1991); *Cunningham v. State,* 318 Md. 182, 185, 567 A.2d 126, 127

---

6. All of the injuries sustained by the respondent in the accidental injury being before the Commission, and the issue decided being the extent and nature of the respondent's permanent partial disability, it is clear that the Commission found, as a fact, that the 85% permanent partial disability resulted from all of his injuries. Because it may be granted only when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law, *see* Maryland Rule 2–501(e); *Gross v. Sussex,* 332 Md. 247, 255, 630 A.2d 1156, 1160 (1993); *Beatty v. Trailmaster,* 330 Md. 726, 737, 625 A.2d 1005, 1011 (1993); *Arnold Developer, Inc. v. Collins,* 318 Md. 259, 261, 567 A.2d 949, 950 (1990), partial summary judgment could have been granted only if the proper treatment of the vision loss was an issue of law. It is apparent that the trial court treated the vision loss issue as one of law. As will be seen, however, it erred in the result it reached.

Although the transcript of the Commission hearing reflects that all of the respondent's injuries were before the Commission, the trial judge apparently accepted the respondent's argument that the Commission did not address the extent of disability caused by his other injuries. It is not necessary that we further address this matter in light of the resolution of the vision loss issue.

(1989), is clear and unambiguous, it is ordinarily unnecessary to go further, *State v. Thompson,* 332 Md. 1, 7, 629 A.2d 731, 734 (1993); *Mustafa,* 323 Md. at 73, 591 A.2d at 485—because it is part of the context, a related statute that fairly bears on the fundamental issue of legislative purpose or goal must also be considered. *Popham v. State Farm Mutual Insurance Company,* 333 Md. 136, 148, 634 A.2d 28, 34 (1993); *GEICO v. Insurance Commissioner,* 332 Md. 124, 131–32, 630 A.2d 713, 717 (1993).

The statute at issue in this case is § 9–627. Pertaining to the duration of compensation payable with respect to a permanent partial disability, it provides, in pertinent part:

(a) *In General.*—If a covered employee is entitled to compensation for a permanent partial disability under this Part IV of this subtitle, the employer or its insurer shall pay the covered employee compensation for the period stated in this section.

(b) *Loss of thumb, finger, or great toe.*

\* \* \* \* \* \*

(c) *Loss and loss of use of phalanxes and digits.*

\* \* \* \* \* \*

(d) *Loss of other toes, hand, arm, foot, leg, eye, hearing, or septum.*—

(1) Compensation shall be paid for the period listed for the loss of the following:

\* \* \* \* \* \*

(vi) An eye, 250 weeks.

\* \* \* \* \* \*

(e) *Permanent loss of use of hand, arm, foot, leg, or eye.*— The permanent loss of use of a hand, arm, foot, leg, or eye shall be considered equivalent to the loss of the hand, arm, foot, leg, or eye.

(f) *Partial loss of vision.*—

\* \* \* \* \* \*

(k) *Other Cases.*—(1) In all cases of permanent partial disability not listed in subsections (a) through (j) of this section, the Commission shall determine the percentage by which the industrial use of the covered employee's body was impaired as a result of the accidental personal injury or occupational disease.

(2) In making a determination under paragraph (1) of this subsection, the Commission shall consider factors including:

(i) the nature of the physical disability;  and

(ii) the age, experience, occupation and training of the disabled covered employee when the accidental personal injury or occupational disease occurred.

(3) The Commission shall award compensation to the covered employee in the proportion that the determined loss bears to 500 weeks.

*       *       *       *       *       *

Provisions relating to permanent total disability also are relevant to section 9–627's interpretation. Section 9–636, captioned "Determination of disability; presumption," provides:

(a) *Determination of disability.*—Except as provided in subsection (b) of this section, a permanent total disability shall be determined in accordance with the facts in each case.

(b) *Presumption.*—Absent conclusive proof to the contrary, the loss or loss of use of any of the following constitutes a permanent total disability:

(1) both arms;

(2) both eyes;

(3) both feet;

(4) both hands;

(5) both legs;  or

(6) a combination of any 2 of the following:

(i) an arm;

(ii) an eye;

(iii) a foot;

(iv) a hand; and

(v) a leg.

Section 9–637 prescribes the amount and duration of payments to a permanently totally disabled employee. It provides that such employee shall receive two-thirds of his or her average weekly wage, not to exceed $45,000.00, except that such payments are to continue during the period of permanent total disability.

Section 9–627(b)–(j) prescribes the compensation for the loss or loss of use of certain parts of the body. Subsection (d), like subsection (b), speaks in terms of a specific body part, for the loss or loss of use of which compensation is payable, and states what that compensation is. Thus, in addition to "an eye," subsection (d) addresses "one of the toes other than the great toe," *a* hand, *an* arm, *a* foot, and *a* leg. Similarly, subsection (b) enumerates the compensation for *a* thumb, *a* 1st finger, *a* 2nd finger, *a* 3rd finger, *a* 4th finger, and *a* great toe. Subsection (e) also refers to the body parts in the singular. When more than one body part is meant, that is clearly stated. *See* subsection (d)(2)(ii) prescribing the compensation for "the total loss of hearing of both ears;" subsection (c)(3) relating to "2 or more digits or 1 or more phalanxes of 2 or more digits of a hand or foot." It is significant that, while § 9–627 specifically addresses partial loss of vision, it does not even remotely address the total loss of vision. *See* subsection (f).

Unlike when the loss is a scheduled loss, in the case of "Other Cases" the nature of the physical disability alone is not dispositive. Rather, taking it into account, along with the specific occupational characteristics of the claimant, the Commission is required to determine the extent to which the specific physical disability impairs the industrial use of the claimant's body. *See* subsection (k).

### III.

In addition to being blind, having lost the sight in both his eyes as a result of being shot, the respondent also lost his

sense of smell and taste and the bullet is still lodged in his head. The respondent acknowledges that the extent of permanent partial disability as a result of the latter three injuries must be calculated pursuant to "Other Cases." He argues, however, that compensation payable with respect to the loss of his eyes must be determined by reference to § 9–627(d)(1)(vi). The Court of Special Appeals agreed. Both rely heavily on the principle that the Workers' Compensation Act should be construed liberally in favor of the injured employee. The Court of Special Appeals was also persuaded by "the fact that the injured employee receives greater compensation under the circuit court's interpretation of the statute than the Commission's interpretation," and "that the Commission and reviewing court have discretion to consider each injury resulting from a single accident as a product of scheduled specific injuries, the body as a whole under the "Other Cases" provision or a combination of both." *Cassidy*, 99 Md.App. at 475, 637 A.2d at 902. Considered in light of the broad standard applicable to circuit court review of Commission decisions, the intermediate appellate court concluded that the circuit court did not err. *Id.* at 475–76, 637 A.2d at 902.

## IV.

It is well settled, as the Court of Special Appeals recognized, *Cassidy*, 99 Md.App. at 469, 637 A.2d at 899, that the Workers' Compensation Act " 'should be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes. Any uncertainty in the law should be resolved in favor of the claimant' " (quoting *Victor v. Proctor & Gamble Mfg. Co.*, 318 Md. 624, 629, 569 A.2d 697, 700 (1990)). It is likewise well settled, as the Court of Special Appeals also acknowledged, 99 Md.App. at 469, 637 A.2d at 899, that the court may not disregard the plain meaning of the Act in the name of liberal construction, (quoting *C & R Contractors v. Wagner*, 93 Md.App. 801, 808, 614 A.2d 1035, 1038 (1992), *cert. denied*, 329 Md. 480, 620 A.2d 350 (1993)).

There is nothing ambiguous or uncertain about § 9–627 as it relates to the loss of two eyes. Indeed, its provisions are clear, straightforward, and unambiguous. As we have seen, subsections (b)–(j) contain provisions pertaining to specified body parts, including subsection (d)(1)(vi), which lists the compensation payable for the loss of "an eye." Subsection (k) applies to those "cases of permanent partial disability not listed in subsections (a) through (j) of this section." Thus, unless the loss of two eyes is in the schedule for specific injuries, it must be determined pursuant to subsection (k).

The loss of two eyes very clearly is not within subsection (d)(1)(vi): "an eye" is not the same as two eyes. *See Dept. of Correction v. Johnson*, 222 Md. 139, 159 A.2d 658 (1960). Not only is this clear from the plain language, but it is clear from the context as well.

Section 9–627 pertains to permanent partial disability. The loss of two eyes, in the absence of conclusive proof to the contrary, is presumptively a permanent total disability. See § 9–636(b). It is undisputed, and for good reason, that the respondent is not permanently totally disabled. Permanent total disability envisions a condition in which a claimant is incapable of doing work of any kind, and not just the kind that the claimant was accustomed and qualified to do at the time of the accident. *Montgomery County v. Buckman*, 333 Md. 516, 528, 636 A.2d 448, 454 (1994); *Mureddu v. Gentile*, 233 Md. 216, 220, 196 A.2d 82, 84 (1964); *Jewel Tea Company v. Blamble*, 227 Md. 1, 3, 174 A.2d 764, 765 (1961); *Congoleum Nairn, Inc. v. Brown*, 158 Md. 285, 287, 148 A. 220, 221 (1930). While it does not mean that the claimant must be utterly and abjectly helpless, it does mean that he or she is able to perform services so limited in quality, dependability, or quantity, that a reasonably stable market for them does not exist. *Babcock & Wilcox, Inc. v. Steiner*, 258 Md. 468, 473–74, 265 A.2d 871, 874–75 (1970); *Dent v. Cahill*, 18 Md.App. 117, 126–27, 305 A.2d 233, 238–39 (1973). Although the respondent is blind and the loss or loss of use of both eyes presumptively renders the employee permanently totally disabled, that pre-

sumption has been conclusively rebutted in the case *sub judice*. The respondent is gainfully employed as an instructor at the Police Academy, earning a salary in excess of that he earned prior to the accident. Clearly, therefore, the respondent is not incapable of performing work of any kind and there is a market for his services.

If the respondent is not permanently totally disabled, then, he must be permanently partially disabled and, so, § 9–627 must apply. The only question is how the extent and nature of that disability are to be determined and how is the compensation payable in respect of it to be calculated?

## V.

■ The issue presented in this case was addressed in *Johnson, supra*, albeit the loss involved in that case was the claimant's thumbs, rather than his eyes. There, the claimant sustained an accidental injury resulting in the traumatic amputation of the terminal phalanx of each of his thumbs. He was awarded permanent partial disability amounting to a 25% industrial loss of use of the body under "Other Cases." The Baltimore City Court [7] affirmed the award, rejecting the employer's contention that it should have been made for a "scheduled injury." The employer made the same argument in this Court. We stated the issue as follows: "Whether the loss, or loss of use, of both thumbs is to be compensated for under subsection (3) [of § 36(3), the predecessor to § 9–627(b) ] by multiplying by two the scheduled allowance for the loss of one thumb, or whether the Commission, in its discretion, might allow compensation in a larger amount under the "Other Cases" provisions of subsection (4)." *Id.*, 222 Md. at 140–41, 159 A.2d at 659. Affirming, we stated:

> We conclude that the amputation of both thumbs is not within the schedule of specific disabilities contained in subsection (3) of Section 36 of the Act and that it falls within

---

7. Prior to January 1983, what is now the Circuit Court for Baltimore City consisted of several courts, collectively called the Supreme Bench of Baltimore, one of which was the Baltimore City Court.

subsection (4) of that Section, the "Other Cases" provision of our statute.

*Id.* at 149, 159 A.2d at 664. In rejecting the argument that the schedule's reference to a body part in the singular was "intended to establish a unit price or rate and to limit recovery in the case of each member, to a fixed number of weeks, multiplied by a fixed percentage of the average weekly wage," *id.* at 150, 159 A.2d at 664–65 (Henderson, J. dissenting), the Court observed:

It may be added that the compensation for loss of a thumb is expressed as exactly that—"[f]or the loss of a thumb." . . . So, too, is the compensation for permanent partial disability expressed (in subsection (3)(a) immediately following that for the loss of a thumb) for the loss of a first finger, a second finger, a third finger, or a fourth (or little) finger. . . . Likewise . . . compensation is so expressed in subsection (3)(b) for the loss of a great toe, (and for the loss of one of the toes other than the great toe) and for the loss of a hand, an arm, a foot, a leg, or an eye. It may also be noted that for the total loss of hearing in both ears, the scheduled allowance is more than twice that provided for the total loss of hearing in one ear. It seems that not a great deal of importance can be attached to this either way. On the one hand, it may suggest that multiplication by two would be the normal way to compute the award; on the other hand, and this seems to us a somewhat stronger implication, it seems a measure of the extent of total deafness as a partial disability, and this measure is greater than twice the loss of hearing in one ear. This view is fortified by the fact that under Sec. 36(1)(a), the loss, or loss of use, of both hands, both arms, both feet, both legs, or of both eyes, or of any two thereof, "shall, in the absence of conclusive proof to the contrary, constitute permanent total disability." Scheduled benefits for permanent, partial disability for the loss of one hand, one foot, etc. vary, yet the loss of both hands, both feet, etc., or any two of them, will ordinarily amount to permanent, total disability. Such a result is not merely a product of the multiplication table.

*Id.* at 142–43, 159 A.2d at 660. The Court likewise rejected the applicability of the singular—plural canon of construction, *see* Maryland Code (1957, 1994 Repl.Vol.) Art. 1 § 8, explaining:

> It would be obviously unreasonable to read it as meaning that the loss of one thumb should include the loss of two at the rate of compensation allowed for one, and no such forced contention is made. Literally, however, apart from the limitation against an unreasonable construction, such a contention could be made, and it is difficult to find any other construction of the actual words used through which it could be operative in this case. Merely to state such a construction is, we think, to refute it.

*Id.* at 149, 159 A.2d at 664.

The Court of Special Appeals believes the *Johnson* opinion illustrates two points, which support its conclusion: "That the employee received greater benefits under the "Other Cases" provision than he would have been awarded under the schedule for the loss of one thumb multiplied by two [and] the Commission and reviewing court are not *required* to consider multiple injuries from one accident under the 'Other Cases' provision." *Cassidy,* 99 Md.App. at 474, 637 A.2d at 901. Although *Johnson* is factually consistent with the first proposition, it does not follow that that proposition applies in other factual settings. *Johnson* simply does not support the second proposition.

Underlying both points, no doubt spawned by the manner in which the *Johnson* court phrased the issue to be decided, is the assumption that the Commission has discretion to decide under which provision of § 9–627 a claimant's permanent partial disability will be calculated. It is clear, in that regard, that there can be no exercise of discretion unless at least one of the multiple injuries is a scheduled loss. Consequently, the intermediate appellate court's assumption is, in turn, premised on the more basic assumption that the schedule's reference to the singular includes the plural, an assumption that, as we have seen, *Johnson* rejected. The loss of two eyes, as we

have also seen, like a head injury and the loss of taste and smell, is not a scheduled injury. The only provision of § 9–627 that is applicable, therefore, is "Other Cases."

To say that "the Commission and reviewing court are not required to consider multiple injuries from one accident under the "Other Cases" provision," *Cassidy*, 99 Md.App. at 474, 637 A.2d at 901, is not the same as saying "the Commission and reviewing court have discretion to consider each injury resulting from a single accident as the product of scheduled specific injuries, the body as a whole under the "Other Cases" provision or a combination of both." *Id.* at 475, 637 A.2d at 902. The former proposition recognizes that multiple injuries resulting from a single accident *can* support an award of permanent partial disability under both § 9–627(b)—(j) and § 9–627(k). The latter is premised on the assumption that such injury can support an award under either.

*Barnes v. Ezrine Tire Company*, 249 Md. 557, 241 A.2d 392 (1968), upon which the Court of Special Appeals relied for both propositions, supports the first, but not the second. It was a case in which the claimant suffered multiple injuries, both scheduled and "Other Cases," in a single accident. Specifically, the claimant injured his right eye, which was covered by § 36(3) [present § 9–627(d)(1)(vi) ], and his back and right shoulder, which fell within § 36(4) [present § 9–627(k) ], "Other Cases." The injuries, in other words, fit exactly both categories of permanent partial disability prescribed under the Act. The only issue in *Barnes* was whether the serious disability provision could be triggered by cumulating the awards for the scheduled injury and "Other Cases." Neither *Johnson* nor the case *sub judice* is like *Barnes*. In *Johnson* and the case *sub judice*, the multiple injuries fall only within "Other Cases."

## VI.

In any event, it is true that the *Johnson* decision discussed, and, indeed, approved the award, to some extent, because it was greater than an award made pursuant to the scheduled

injuries provision. That, however, does not assist the respondent in this case.

To be sure, when the specific injuries schedules are not applicable, neither the Commission nor the reviewing court has discretion to use them to make a permanent partial disability award. In that event, the award must be made pursuant to "Other Cases." Because that provision requires the Commission to "determine the percentage by which the industrial use of the covered employee's body was impaired as a result of the accidental personal injury ...," in light of certain factors, and does not prescribe a specific award, making an award pursuant to subsection (k) does involve the exercise of discretion. When the award made by the Commission is more than two times that prescribed by the Legislature for the loss of one member, the employer may legitimately ask whether the Commission has abused its discretion in making the award. Conversely, when it is less, the employee may be expected to raise the same issue. Unlike, as here, where the loss is one that is presumptively totally disabling, but the presumption has been overcome, resulting in an award less than two times that for a scheduled member, where the loss is not presumptively totally disabling, the award could be, in the Commission's discretion, either greater or less than twice the award for a single scheduled member.

Thus, while the propriety of the extent of the permanent partial disability decision is not necessary to the Commission's decision that "Other Cases," rather than the specific injuries schedules, applies, there was an abuse of discretion issue in *Johnson*, *i.e.* the propriety of the amount of the award.[8] It was in that context that the Court, having referred to 2 Lawson, Workmen's Compensation, § 58.20 for the proposition that "The extended effects of [the loss of a member of the body] may result in greater interference with the employee's ability to work than might be expected from a simple and

---

8. These are two separate questions, a fact that has been obscured by the manner in which the issue was phrased in *Dept. of Correction v. Johnson*, 222 Md. 139, 149–50, 159 A.2d 658, 664 (1960).

uncomplicated injury," noted that: "It requires neither argument nor elaboration to show that to a manual worker the loss, or loss of use, of both thumbs is a substantial injury and that it is much more serious than would be the loss of one thumb." *Johnson*, 222 Md. at 146, 159 A.2d at 662–63. As its discussion of its earlier cases indicate, the Court recognized that "[t]he question of when a specific injury becomes 'an other injuries' type often presents a shadowy line of demarcation and calls for the wise discretion of the ... Commission ... in the light of substantial facts in evidence." *Id.* at 146, 159 A.2d at 662. *Lisowsky v. White*, 177 Md. 377, 9 A.2d 599 (1939) is illustrative.

In that case, the claimant's accidental injuries required the first, second, and third fingers of his left hand to be amputated in the middle of the second joint. The Commission awarded permanent partial disability amounting to two-thirds loss of his first, second, and third fingers respectively, refusing the claimant's request that it be for the loss of the use of a part of his hand. The award was affirmed on judicial review. In this Court, noting that the schedules, though applicable, were conflicting—§ 36 prescribed an award for the loss of each of the fingers and a separate one for the loss or loss of use of a hand—we stated the question as being "whether or not the court erred in construing the law as meaning that the sum of the loss with respect to the three fingers should be taken as the amount of compensation, or whether the partial permanent injury done to the use of the whole hand be the basis for compensation." *Id.* at 380, 9 A.2d at 600. In concluding that it was the latter, the Court said:

> The higher element or measure of damage, or injury, in workmen's compensation cases, should be accorded to the injured person. Otherwise he would not received [sic] that adequate compensation for his injuries that is contemplated by law. In other words, if the loss, or injury, to the entire hand, is greater than that limited to the aggregate loss of the fingers, then it would seem but just that the higher measure of damage should be applied, because after all it is adequate compensation that the law seeks to accord.... If

there is a conflict in the Workmen's Compensation Law with respect to these questions of construction, it seems to us that this should be resolved in favor of the claimant, otherwise that part of the statute which vouchsafes to him a certain sum of money resulting from a definite injury sustained by him, as shown by established facts, would be nullified, and a construction giving to him a lesser sum would stand in its place. We can scarcely think the Legislature intended this to be. Therefore this permanent partial loss with respect to the usefulness of his whole hand should be given precedence over the aggregate loss to his three fingers, and for the further reason that the loss of three fingers occasions an injury greater than that measured by adding the loss of each finger. This combined loss does something more than a loss of fingers, for it occasions a loss to the usefulness of the entire hand.

*Id.* at 381–82, 9 A.2d at 601.

Although, in reality, in *Johnson*, there was no similar conflict—the Court having concluded that the schedule applied only to one thumb—because the amount of the award made exceeded two times the award for one thumb, there was in that case a substantial question concerning the soundness of the Commission's exercise of discretion in determining the extent of the claimant's permanent partial disability. Where discretion is involved and the evidence on the question is debatable, the claimant is entitled to the benefit of the doubt, not unlike the result required by the liberal construction policy underlying the Act.

In the case *sub judice*, not only is there no ambiguity with regard to which of the several provisions of § 9–627 governs the calculation of the permanent partial disability award for the loss of two eyes, but, more importantly, no issue of the Commission's exercise of discretion has been raised by any party. Of course, when the losses are of body parts that presumptively render the claimant permanently totally disabled, but the case is nevertheless appropriately considered under § 9–627, the presumption having been overcome, the extent of permanent partial disability necessarily will be less

than 100%. It is conceivable that, in that situation, the Commission could set the percentage of permanent partial disability so low as to be an abuse of discretion. That, however is not what the respondent argues.

### VII.

We hold that the loss of two eyes, when the presumption of total disability has been rebutted, is covered under "Other Cases," § 9–627 being clear and unambiguous in that regard. That being the case, the liberal construction rule does not apply in the case *sub judice*. Accordingly, the circuit court erred in granting the respondent's motion for partial summary judgment and remanding the case to the Commission for passage of an order with respect to the respondent's other injuries. It follows that the Court of Special Appeals also erred in affirming that judgment.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY.*

*COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY THE RESPON-DENT.*