878 A.2d 588 (2005)
388 Md. 37
Cathy MASON
v.
Chauncey R. LYNCH.
No. 24 September Term 2003.
Court of Appeals of Maryland.
July 15, 2005.
*589 David M. Kopstein (Bryan Perilman of Dross, Levenstein, Perilman & Kopstein, on brief), of Seabrook, for petitioner.
Thomas R. Mooers (Brian C. Malone of Mooers & Associates, on brief), of Washington, D.C., for respondent.
Argued before BELL, C.J.,[*] ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.
Opinion by ELDRIDGE, J.
The petition for a writ of certiorari in this negligence tort action presented a single question as follows:
"In a personal injury case arising from a motor vehicle accident, may a defendant place in evidence photographs showing minimal property damage and argue [in closing argument to the jury] that the photographs support an inference that the plaintiff was not injured, absent expert testimony establishing a correlation between property damage and personal injury?"
*590 We granted the petition and shall hold that, under the circumstances of this case, the admissibility of the photographs was within the trial judge's discretion and that the trial judge did not abuse his discretion. We shall further hold, in light of the admission of the photographs and other evidence, that the closing argument by defendant's counsel was not improper.

I.
The motor vehicle accident giving rise to this tort suit occurred at the western end of the Woodrow Wilson Bridge, in the eastbound lanes, as the parties were traveling from Virginia to Maryland.[1] The accident involved three motor vehicles in a rear-end chain collision. The plaintiff-petitioner, Cathy Mason, was operating the front automobile which was stopped, in the left eastbound lane, because of heavy traffic. Cathy Mason's brother, Gregory James Mason, was a passenger in her car. Stopped directly behind Cathy Mason's car was an automobile operated by Warren Goldman. The automobile operated by the defendant-respondent, Chauncey R. Lynch, had been in the adjacent lane of traffic. Lynch decided to change lanes, pulling his vehicle into the left lane behind Goldman's car. While Lynch was changing lanes and looking backward, his vehicle struck the Goldman vehicle in the rear. Even though Goldman's foot was on the brake pedal, the impact caused Goldman's car to strike the rear of Mason's car, pushing Mason's car forward. During Goldman's attempt to control his automobile after the initial impact, Goldman's car struck Mason's car in the rear a second time.
Mason filed in the Circuit Court for Prince George's County this tort action against Lynch, alleging that Mason suffered personal injuries as a result of the accident and that these injuries were proximately caused by Lynch's negligence. Lynch answered by, inter alia, denying that he was negligent or that his actions caused Mason's injuries.
Prior to trial, counsel for both parties agreed not to call health care providers as witnesses at the trial and not to conduct discovery or depositions of experts. Instead, they stipulated to the submission of medical records and bills, including bills and reports from each of Cathy Mason's treating doctors, a report of an independent medical evaluation conducted at the request of defendant's counsel, and reports by Mason's doctors rebutting the defense's independent report. Counsel further *621 is mandated by statute, we reasoned that,
the purpose of the required uninsured motorist coverage is to make available the same coverage as would have been available had the tortfeasor complied with the liability insurance requirements of the financial responsibility law. Since the liability insurance required by the financial responsibility law includes wrongful death claims, it follows that the uninsured motorist coverage also includes wrongful death claims.
Forbes, 322 Md. at 698, 589 A.2d at 948.
Harleysville also claimed that, even if the uninsured motorist statute covered wrongful death actions, there could be no coverage because Carol Forbes was not insured by the policy. She was not the named insured on the policy, nor did she live in the home of the named insured at the time of the accident. Forbes, 322 Md. at 701, 589 A.2d at 950.[5] We disagreed with Harleysville and held "under the particular circumstances of that case, Carol Forbes was an `insured' or `covered person' at the time of the accident." Forbes, 322 Md. at 702, 589 A.2d at 950. In support of this conclusion, we noted:
It is almost certain that the intent of Carol and Robin Forbes in obtaining the Harleysville policy on the family station wagon was that both of them as co-owners and co-operators would be insured with respect to their vehicle. Acceptance of Harleysville's theory would frustrate this intent. Moreover, under Harleysville's construction of the policy, whenever a married couple in the position of Carol and Robin Forbes separated, even temporarily, one of them would have to obtain a second policy on the family car if he or she were going to be fully insured with regard to the vehicle.
Forbes, 322 Md. at 705, 589 A.2d at 952. We concluded that even though Carol had temporarily moved out of the family home, she was still considered a resident of the insured's household for purposes of being covered by the couple's insurance policy. Id.
There is no question that the facts of the instant case are distinguishable from Forbes. Jaedon seeks to recover under his mother's insurance policy for the death of his father, a man who was not a named insured under that policy, was not married to the policyholder, and did not live with the policyholder. Recognizing that the Court's main holding does not support his case, Jaedon urges us to consider the "alternate holding" discussed by the Court in Forbes.
The Court noted that "[a]s an alternate holding, we agree with the petitioner's argument that the minor children's wrongful death claims were within the mandatory uninsured motorist coverage of Art. 48A, § 541(c), regardless of Carol Forbes's status under the language of the policy." Forbes, 322 Md. at 708, 589 A.2d at 953. The Court mentioned the statutory language "death of the insured" and stated that "[w]e do not believe, however, that the language of § 541(c)(1) and (3) means that the deceased must always be an `insured' under the particular language of the insurance policy." Forbes, 322 Md. at 709, 589 A.2d at 954. To explain this conclusion, the Court wrote:
The basic coverage language of § 541(c) is set forth in paragraph (2) and requires coverage "for damages which the insured is entitled to recover from the owner or operator of an uninsured motor *622 vehicle because of bodily injuries [including death] sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle." The Forbes children's wrongful death claims squarely fall within this statutory language even if their mother at the time of the accident was not an "insured" under the language of Harleysville's policy. The children are "insureds" under the Harleysville policy. Under Maryland's wrongful death statute the children are legally entitled to damages from the owner or operator of an uninsured motor vehicle because of the death of their mother sustained in an accident arising out of the operation of the uninsured vehicle.
Forbes, 322 Md. at 709, 589 A.2d at 954.
The language of the uninsured motorist statute has changed since Forbes.[6] As a result, the alternate holding in Forbes does not control the outcome of this case. The current statutory language makes it very clear that surviving family members can recover under the uninsured motorist coverage for the wrongful death of people who were insured under that policy.[7] Section 19-509(c)(1), while its language is similar to the language interpreted in Forbes, must be considered along with § 19-509(c)(2), a section that was not before the Court in Forbes. When the sections are viewed together, it is clear that § 19-509(c)(1) gives no indication that the insured can recover for the bodily injuries of anyone but himself under that section. There is simply no room in the current statute to find that insured persons can recover under their own uninsured motorist policy for the wrongful death of family members who are not covered by that policy. As succinctly stated in the opinion of the Court of Special Appeals:
Because the General Assembly included a subsection specifically addressing wrongful death claims  Ins. § 19-509(c)(2)  it is evident that the legislature intended the subsection to regulate all instances in which a claimant seeks wrongful death benefits under an uninsured motorist policy. Thus, contrary to appellee's argument, Ins. § 19-509(c)(1) does not apply.
Nationwide v. Johnson, 159 Md.App. at 354, 859 A.2d at 284. We agree.
We recognize that the purpose of the required uninsured motorist coverage is "`to assure financial compensation to the innocent victims of motor vehicle accidents who are unable to recover from financially irresponsible uninsured motorists.'" Lane v. Nationwide Mut. Ins. Co., 321 Md. 165, 169, 582 A.2d 501, 503 (quoting Pennsylvania Nat'l. Mut. v. Gartelman, *623 288 Md. 151, 157, 416 A.2d 734, 737 (1980)). We also recognize that the remedial nature of the uninsured motorist statute "`dictates a liberal construction in order to effectuate its purpose.'" Nationwide Mut. Ins. Co. v. Webb, 291 Md. at 737, 436 A.2d at 475 (quoting State Farm Mut. Ins. Co. v. Maryland Auto. Ins. Fund, 277 Md. 602, 605, 356 A.2d 560, 562 (1976)). That purpose, however, is not without limits. The words of the statute itself delineate the extent of the statute's reach. See Stearman v. State Farm Mut. Auto. Ins. Co., 381 Md. 436, 449, 849 A.2d 539, 547 (2004) (noting that the General Assembly's purpose in enacting the compulsory insurance statutes was not to assure complete insurance recovery for all victims of automobile accidents and reaffirming that the purpose did not extend beyond the prescribed statutory minimum coverage regarding the household exclusion); see also Mayor & City Council of Baltimore v. Cassidy, 338 Md. 88, 97, 656 A.2d 757, 762 (1995) (noting that the court "may not disregard the plain meaning" of the Workers' Compensation Act, also a remedial statute, in the name of liberal construction). To interpret the statute in the present case as suggested by Jaedon would require us to ignore the plain language and rewrite it ourselves. That is not within our power. As stated in Stearman:
We will not invade the province of the General Assembly and rewrite the law for them, no matter how just or fair we may think such a new law or public policy would be. The formidable doctrine of separation of powers demands that the courts remain in the sphere that belongs uniquely to the judiciary  that of interpreting, but not creating, the statutory law.
Stearman, 381 Md. at 454, 849 A.2d at 550.
In conclusion, we hold that § 19-509 of the Insurance Article does not require an insurer to provide uninsured motorist coverage for the wrongful death of a person who was not an insured under the policy. Section 19-509(c)(1) clearly requires the insurer to pay the insured for his or her own bodily injuries, suffered as a result of a collision with an uninsured motorist. Section 19-509(c)(2) makes it clear that if a person who is insured under the policy dies as a result of a motor vehicle collision with an uninsured motorist, the surviving relatives of that insured can recover for the wrongful death of the insured under the insured's policy.
JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. APPELLANT TO PAY ALL COSTS.
NOTES
[*] Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.
[1] The Woodrow Wilson Bridge, which is part of Interstate Route 95, spans the Potomac River in basically an east/west direction, and provides a road connection between the States of Maryland and Virginia. Most of the Woodrow Wilson Bridge is in Maryland, although small portions of the Bridge, at the western end, are in the District of Columbia and in Virginia.

In the Circuit Court, the plaintiff took the position that the accident occurred in Virginia. The plaintiff filed a notice of her intention to rely on "foreign law" and requested jury instructions based on Virginia's substantive tort law. The trial judge rejected the request for jury instructions based on Virginia law and instructed the jury in accordance with Maryland law. No issue was raised in the Court of Special Appeals or in this Court concerning the trial judge's choice of law ruling.
Moreover, the sole issue raised in this Court concerns the admission into evidence of the photographs and defense counsel's argument based on the photographs. This is an issue governed by the law of the forum and not by the law of the place where the accident occurred. See, e.g., Vernon v. Aubinoe, 259 Md. 159, 162, 269 A.2d 620, 621 (1970); Joffre v. Canada Dry Ginger Ale, Inc., 222 Md. 1, 6-8, 158 A.2d 631, 634-635 (1960); Restatement (Second) of Conflict of Laws, § 138 (1971); Robert A. Leflar, Luther L. McDougal III, Robert L. Felix, American Conflicts Law, § 123, at 337-340 (Fourth Edition 1986).
[5] Harleysville conceded, however, that the children were insureds within the meaning of the policy, even though they were not named insureds and did not live in the home of the named insured at the time of the accident. Id.
[6] As discussed in the opinion of the Court of Special Appeals, Forbes was filed on May 10, 1991. On April 7, 1991, the General Assembly amended the uninsured motorist statute and the new law became effective on July 1, 1991. Nationwide v. Johnson, 159 Md.App. 345, 353, 859 A.2d 279, 284 (2004).
[7] As noted previously, § 19-509(c) provides:

In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:
(1) the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle; and
(2) a surviving relative of the insured, who is described in § 3-904 of the Courts Article, is entitled to recover from the owner or operator of an uninsured motor vehicle because the insured died as the result of a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle.
Md.Code (1997, 2002 Repl.Vol.), § 19-509(c) of the Insurance Article. (Emphasis added.)